## Case No. 17,952.

### WOOD v. MANN.

[1 Sumn. 578.][1]

Circuit Court, D. Massachusetts. May Term, 1834.

JURISDICTION OF COURT—CITIZENSHIP OF PARTIES —HOW OBJECTION RAISED—PLEA IN ABATEMENT—ANSWER.

1. The circuit courts of the United States are not inferior courts, in the sense of the common law.

2. Where the jurisdiction of the circuit court depends upon citizenship of the parties in different states, this must appear by proper averment in the record; and if it do not, the omission will be fatal at any stage of the cause.
See Wilson v. City Bank [Case No. 17,797]; Bank of Cumberland v. Willis [Id. 885];

Findlay's Ex'rs v. United States Bank [Id. 4,791].

[Cited in Brown v. Noyes, Case No. 2,023.]

[Cited in Adams v. Jeffries, 12 Ohio, 271.]

3. The exception to the jurisdiction of the court, by a denial of the fact of citizenship is of a preliminary nature, and must be taken by a plea in abatement, and not by any general answer.

[Cited in Nesmith v. Calvert, Case No. 10,123; Brown v. Noyes, Id. 2,023.]

[Cited in Young v. Providence & S. S. S. Co., 150 Mass. 555, 23 N. E. 581.]

4. The twenty-third rule of the supreme court, in equity, declaring, "that the defendant, instead of a formal demurrer or plea, may insist upon any special matter in his answer, and have the same benefit thereof, as if he had pleaded the same matter, or demurred to the bill," is simply in affirmance of the common practice of courts of equity, and applies to matters to the merits, and not to such objections as are in abatement merely. Story, Eq. Pl. § 266.

5. Where an exception to the jurisdiction was taken in the answer, it was properly struck out, on reference to a master, for impertinence.

6. Impertinences are any matters not pertinent to those points, which are properly before the court for decision, at any particular stage of a cause.

Bill in equity [by Josiah Wood, Jr., against Samuel H. Mann]. The answer of the defendant was excepted to for impertinence, and referred to a master, who reported, that the answer, being a general answer to the whole bill on the merits, was impertinent in an allegation, which traversed and put in issue the citizenship of the plaintiff alleged in the bill. The defendant filed an exception to the report on this point.

B. Rand, for plaintiff.

F. Dexter and J. Mason, for defendant.

STORY, Circuit Justice. The point now before the court is, whether the exception to the report of the master is well taken or not. The plaintiff in his bill has alleged, that he is a citizen of the state of New Hampshire, and that the defendant is a citizen of the state of Massachusetts. Upon the bill, therefore, it is clear, that the court has jurisdiction over the parties in the case. The defendant, however, instead of putting in a plea to the jurisdiction of the court, denying the citizenship of the plaintiff, has chosen to put in a general answer to the merits, and has prefaced it by a denial of the citizenship of the plaintiff; so that. if this proceeding is correct, upon the replication being filed, testimony must be taken to all the points involved in the answer, as well to that, which regards the citizenship of the plaintiff, as to those, which regard the merits; and the hearing must cover all the grounds in controversy. This course is most manifestly a very inconvenient one, and exceedingly embarrassing to the court. And the question is, whether the defendant has a title to insist upon it, as matter of right; for, as matter of discretion, to be allowed by the court, it is impossible, that any court should voluntarily submit itself to so much embarrassment.

That the denial of the citizenship of the plaintiff is matter proper for a plea in abatement; and that this is the usual form, in which it is brought before the court, cannot admit of any doubt. Whether, being thus matter properly in abatement of the suit for defect of jurisdiction, it can be insisted on in any other manner, or in any subsequent stage of the cause, is the very hinge of the present controversy. If we resort to the general analogies of law or equity for sources of argument, they seem to establish the general proposition, that matters properly pleadable in abatement cannot be taken advantage of in any other manner than by a plea in abatement. There are some exceptions; but they stand upon very peculiar grounds. There is a peculiar fitness in the application of this principle to cases of pleas to the jurisdiction; for a general answer certainly does, by necessary implication, admit the competency of the court to entertain the suit between the parties, and to take testimony, and hear it upon the merits. It is true, that if it is apparent upon the face of the record, that the court has not jurisdiction over the cause, or over the parties, the court will dismiss it, whether the parties consent to the jurisdiction or not. If therefore the subject matter is not within the jurisdiction of a court of equity; or the proper parties are not before it; or the case as made is not fit for the interposition of its authority; and the matters are apparent on the face of the proceedings, the court will of its own mere motion, in any stage of the cause, dismiss the bill. This is familiar practice in chancery in many classes of cases; and in the courts of the United States, it is also familiar in a class of cases, which, owing to their peculiar organization, can rarely occur in other courts of equity. The courts of the United States are courts of limited jurisdiction; but, as has been often solemnly settled, they are not inferior courts in the sense of the common law, whose jurisdiction is to be scanned by the niceties applied by the common law to inferior courts. The circuit courts of the United States have no jurisdiction of suits between citizens, unless they are citizens of different states; and not always even then, under the act of congress of 1789, c. 20 [1 Stat. 73]. In every writ and bill bringing a suit before the circuit court, it is, therefore, indispensable to show by proper averments in the record, that the plaintiff and defendant are citizens of different states; and the omission is fatal in any stage of the cause, unless it is cured by an amendment. But where the citizenship is properly averred, the circuit courts have complete jurisdiction, unless that jurisdiction is ousted by a denial of the citizenship and proof of the non-existence of the citizenship of either party as alleged. So many cases have been decided upon this distinction, that it has become a general doctrine, as unquestioned in fact, as it is unquestionable in its nature. But notwithstanding the circuit court may have the most clear ju-

risdiction over the parties, still the case or the subject-matter may not be within the proper jurisdiction of any municipal court in any form of proceeding, or not in the form adopted, either at law or in equity. In either case the objection is open; and the court itself will decline jurisdiction and dismiss the suit.

There is a perfect novelty in the present experiment upon the usual proceedings of courts of equity. That alone would lead one to doubt of its correctness. The very silence of the practice under such circumstances would be quite significant of what the true rule is. If the course of practice has been to take such an exception by way of plea to the jurisdiction, and not by way of general answer, or in a general answer, it would be difficult to believe, that the right existed, to take it by way of answer, and had never been tried. Upon looking into the books of practice I have not been able to find a single case, in which the slightest hint is given, that an exception of this nature can be taken otherwise than by a plea to the jurisdiction. It is uniformly stated to be a matter of abatement, and proper for a plea; and it is never alluded to, as having any place in a general answer, or as fit to be allowed to be there. Lord Redesdale, in his admirable treatise on Equity Pleadings (page 222), treats of it under this head, and this only. So do Mr. Cooper, Mr. Beames, Mr. Maddock, and Mr. Hind.[2] The orders of Lord Clarendon in chancery manifestly presuppose, that this is the appropriate, and, I may say, the only correct course. Beames, Orders Ch. pp. 172–174. Lord Hardwicke in Penn v. Lord Baltimore, 1 Ves. Sr. 446, puts the point in the very view which has been suggested: "To be sure," says he, "a plea to the jurisdiction must be offered in the first instance, and put in primo die; and answering submits to the jurisdiction; much more when there is a proceeding to hearing on the merits, which would be conclusive at common law. Yet a court of equity, which can exercise a more liberal discretion than common law courts, if a plain defect of jurisdiction appears at the hearing, will no more make a decree, than where a plain want of equity appears." And again, in Roberdeau v. Rous, 1 Atk. 544, Lord Hardwicke said, that the defendant should not in that case have demurred to the jurisdiction; for a demurrer is always in bar, and goes to the merits of the case; and therefore, that it was informal and improper in that respect; for he should have pleaded to the jurisdiction. Lord Eldon, in Iveson v. Harris, 7 Ves. 254, in effect remarked, that if a defendant in an inferior court has pleaded to the jurisdiction, he can plead nothing inconsistent with it; and therefore he must not do

any thing to give the court jurisdiction; and if he has waived the objection, or has so pleaded as to make it incompetent to him to stay the proceedings afterwards, the objection is gone. See, also, Anon., 1 P. Wms. 476, 477. In Edgworth v. Davies, 1 Ch. Cas. 41, an objection, very similar to the present, was taken by way of plea; and the cases there cited show the general practice.

There being, then, a total absence of all direct authority in the case, what are the grounds, upon which the present exception can be maintained? First, it is argued that the twenty-third rule of the supreme court in equity causes (in 1822) declares,."that the defendant, instead of a formal demurrer or plea, may insist upon any special matter in his answer, and have the same benefit thereof, as if he had pleaded the same matter, or had demurred to the bill." But this rule is merely in affirmance of the common practice of courts of equity, and applies to matters to the merits, and not to such objections as are in abatement merely, and are not proper for a general answer. Again; it is argued, that the supreme court have, on various occasions, taken notice of defects of jurisdiction, and of objections thereto, although not taken by way of plea. That is true; but it was, where the matter was apparent upon the record; and not, where the matter was dehors the record, and properly to be brought forward by way of plea in abatement. Thus in Chappedelaine v. Dechenaux, 4 Cranch [8 U. S.] 308, the question was, whether the citizenship of the parties, as described in the record, gave the court jurisdiction; not whether that citizenship as alleged was true in fact. The case of Wormley v. Wormley, 8 Wheat. [21 U. S.] 422, turned merely upon the point, whether the proper parties were before the court for a decree, it being insisted, that the husband of one of the plaintiffs (a mere formal party and a defendant) appeared to be a citizen of the same state as the plaintiff, and so ousted the jurisdiction. In Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 858, the question was, not whether the court had jurisdiction over the parties to the suit, for that was clear; but whether the state of Ohio was not also a necessary party to a decree, the defendant being a mere nominal party, and the state having the real interest in the suit. It was not, then, a question of jurisdiction, but of proper parties to a final decree. Breithaupt v. Bank of State of Georgia, 1 Pet. [26 U. S.] 238, was a mere question, whether there was a sufficient averment of the citizenship of the parties on the record. The case of McDonald v. Smalley, Id. 620, can furnish no just precedent. The manner, in which the question came before the court, was founded upon a local statute, and the circuit court dismissed the bill for want of jurisdiction, upon ascertaining the facts in the mode prescribed by the local law. The objection, therefore, was taken in a peculiar mode, quite irregular indeed, but founded in local practice. In Conolly v. Taylor, 2 Pet. [27 U. S.] 556, the only

---

[2] Coop. Eq. Pl. pp. 238–240; Beames, Eq. Pl. pp. 53, 56–62; Id. pp. 77, 79–98; 2 Madd. Ch. Prac. pp. 238–241. See, also, Lubé, Eq. pp. 208, 209; Com. Dig. "Chancery." I, 1; Hind, Prac. pp. 170, 171, 195, 214; 2 Hov. Supp. p. 20.

question was, whether upon the facts of citizenship, as averred in the record, the court were ousted of jurisdiction. As to some of the parties, defendants, the court could not exercise any jurisdiction in the state, where the suit was brought; as to others, it could. The bill might be dismissed as to the former, and retained as to the latter. The substantial objection was, that one of the original plaintiffs was a party, who could not sue as plaintiff in the circuit court; but this objection was removed by striking out his name as plaintiff, and making him (as might properly be done) a defendant. The cases, then, which have been relied on in support of the right, totally fail to establish it. They are distinguishable upon clear and admitted principles.

But, if there were no practice, and no authority bearing on the present question, how ought it to be decided on principle? It seems to me, that upon principle it is necessarily of a preliminary nature, and ought, therefore, to be taken by plea, and not by any general answer. So the admitted rule is at common law; and it has been repeatedly recognised by the supreme court. Courts of chancery in many cases, as to pleadings, follow the rules of the common law. See Story v. Lord Windsor, 2 Atk. 630, 632. And many objections to the jurisdiction of courts of equity, which might be taken at an earlier stage, come too late at a hearing of the merits, or after the parties have gone on to proceedings, which presuppose jurisdiction. The rule was recognised in Underhill v. Van Cortlandt, 2 Johns. Ch. 369, and Ludlow v. Simond, 2 Caines, Cas. 56. There is good sense in the distinction; and indeed the doctrine is less founded in the mere municipal jurisprudence of a single nation, than in the principles of universal law. It is quite as much the law at Rome, as it is in England or America. All pleas to the jurisdiction are objections to entering into the litis contestatio; and they must, and ought, therefore, to precede the litis contestatio. When the party submits the merits of the case to be heard by the court on the pleadings and testimony, he admits, that the court has jurisdiction for the purpose. Until it is ascertained, that the court has jurisdiction to inquire into the merits, what authority is there to authorize the hearing? Consider for a moment the difficulties in the case now before the court. The defendant makes a general answer. He requires the court to examine the whole merits; he puts at issue all the material grounds of defence; he requires testimony, if they are contested, to be taken to establish them. How can the court order commissions to take testimony on the merits, if it has no jurisdiction? Until this is firmly established, it has no authority to take a single step beyond the facts necessary to establish it. Suppose the defendant's answer is false in its allegations; or evasive, or insufficient; can the court proceed to ascertain, whether it is subject to exceptions of this sort, until its jurisdiction is established? Suppose the

party after an insufficient answer is in contempt; can the court proceed to punish him, while the question is yet pending of jurisdiction, or not? So, if the witnesses under the commission refuse to answer to the merits, and are in contempt, are they under the like circumstances punishable? Suppose they swear falsely, are they indictable, if the jurisdiction should be ultimately surrendered upon proofs in pais? These, and many other questions may be asked; and I cannot perceive, how they can be satisfactorily answered, if the doctrine of the defendant's counsel is admitted. When the general replication is filed to a general answer, the proofs must be taken to all the material facts, which are controverted. The hearing must be upon the whole facts. The court cannot direct proofs to be taken to the single point of jurisdiction in the answer, excluding all other proofs. Such a course is utterly unknown in chancery. It would overthrow all rules on this subject. I confess myself wholly unable to arrive at any other conclusion, than that upon principle such a mixture of matters in abatement and to the merits is wholly inadmissible. I do not quote the case of Dodge v. Perkins [Case No. 3,954], as an authority on the point, though, at least to the judges sitting under that decision, it ought to have some weight, unless they are clearly convinced, that it was erroneous in its principles. The principle stated in that case, and applicable to the present, was not an obiter dictum. It was a question directly before the court, and formed the very ground-work of the ultimate order made in the cause, giving leave to the plaintiff to amend his bill, and to the defendant to withdraw his answer, and to plead. I know, that the question was then very deliberately considered by the court; and the position taken was supposed to be one sustained by established principles. In the course of my attendance in the supreme court, since that period, I have constantly supposed, when questions of this sort have arisen, that the doctrine was clear. I never have heard it doubted or denied by the judges; and if it were not, that I dare not trust my memory upon subjects, where decisions in print do not confirm it, I should be inclined to say, that the habit of the court was, at least by implication, to acknowledge and act upon the doctrine, although there may have been no formal promulgation of it. But if there be no decision in favor of the doctrine, I feel great confidence, that there is none against it. And, upon principle, I have not a single doubt, what the rule is, and ought to be. There is, however, a late case before the vice chancellor, Chichester v. Donegal, 6 Madd. 375, which appears to me to settle, as far as authority may settle, this doctrine. upon the footing for which I contend. And it is the stronger, because it coincides with the opinion of Lord Stowell upon the same point in the ecclesiastical court. "I state," said the vice chancellor, "without exception, as a general principle,

that in courts of equity, as well as courts of law, a party admitting a fact, which gives jurisdiction to a court, and appearing and submitting to that jurisdiction, upon general principles and upon all analogies known to us, can never recede, or, as it is called in the Scotch law, 'resile,' from those facts, and withdraw that admission." And in the very case, in which this opinion was given, the only admission was by implication arising from the party's having omitted to plead to the jurisdiction, and entering into proceedings upon the merits of the case.

The remaining question is, whether the exception can be properly taken in this form upon a reference to the master, and a report for impertinence. It does not strike me, that this point is of any serious importance; for if the court should be satisfied, that the matter was not proper for an answer, and involved inquiries, not in that stage of the cause open to litigation, I have no doubt, that it would be the duty of the court, as a matter of self-protection, to suppress it. It is a great mistake to suppose, that, if the parties do not object to a matter, the court are bound to entertain cognizance of it, and to decide it. But is this matter of impertinence or not? It is argued, that it is not, because it does not answer the description given by Gilbert in his Forum Romanum (page 209), where he says, that "impertinences are, where the records of the court are stuffed with long recitals, or with long digressions of matters of fact, which are altogether unnecessary and totally immaterial to the point in question," and he then proceeds to illustrate it by instances. Doubtless such matters, as he states, are impertinences. But they are not the only matters of this sort, even if the generality of expression in the latter part of the sentence, as to immaterial facts, would not (as I am not prepared to admit) cover the present case. Impertinences are, as I conceive, any matters not pertinent or relevant to the points, which, in the particular stage of the proceedings, in which the cause then is, can properly come before the court for decision. If the cause is at issue upon a general answer, purporting to be to the merits, any matter not going to the merits is properly to be deemed an impertinence. Lord Clarendon's orders[3] put this matter in a clear light. Counsel are to take care, says the order, that the bill, answer, or other pleading "be not stuffed with repetition of deeds, etc., in hæc verba; but the effect and substance of so much of them only, as is pertinent and material to be set down, and that in brief terms, without long and needless traverse of points not traversable, (that is, as I conceive, not traversable in that stage of the cause,) tautologies, multiplication of words, or other impertinences, occasioning needless prolixity," etc. The cases of Nanney v. Totty, 11 Price, 117, and Wagstaff v. Bryan,

1 Russ. & M. 28, appear to me to be very closely in point, as to this very matter of impertinence. It may be added, that the twenty-second section of the judiciary act of 1789, c. 20, manifestly contemplates matters declinatory of the jurisdiction to be in abatement, and to be taken advantage of by way of plea. It provides, that no writs of error shall be sustained and reversals had (and appeals are governed by the same regulations) for error in ruling any plea in abatement, other than a plea to the jurisdiction of the court, or such a plea to a petition or bill in equity, as is in the nature of a demurrer.

Upon the whole, my opinion is, that the master's report is correct; that the exception to it ought to be overruled, and the report to stand confirmed accordingly; and the allegation to be struck out from the answer for impertinence. Livingston v. Story, 11 Pet. [36 U. S.] 393. Decree accordingly.

[For other proceedings in this case, see Cases Nos. 17,951, 17,953, and 17,954.]

3. The time for publication will be enlarged, or more properly, the time for taking the testimony will be enlarged, after publication has passed, though not in fact made, according to the rules of the court, provided some good cause therefor is shown upon affidavit, as surprise, accident, or other circumstances, which repels any imputation of laches. The affidavit is indispensable, except in a case of fraud, practised by the other party.

4. Exhibits in the cause may be proved after publication, and even vivâ voce at the hearing, when there has been an omission of the proof in due season, and they are applicable to the merits.

5. Fresh interrogatories and a re-examination have been permitted after publication, where depositions have been suppressed from the interrogatories being leading, or for irregularity, or where it has been discovered, that a proper release has not been given, to make a witness competent.

6. Semble, that new testimony may be taken after publication to facts and conversations occur-

---

[3] Beames, Orders Ch. pp. 165, 166; Id. p. 167, and note 6. See Mitf. Eq. Pl. p. 318.

