Nov. Term, 1835.

RAYMOND
v.
SIMONSON.

RAYMOND and Another, Administrators, *v.* SIMONSON, Administrator.

| 4b | 77 |
|----|-----|
| 125 | 521 |

| 4b | 77 |
|----|-----|
| 132 | 413 |

The proper mode, under our statute, of objecting to the validity of a plea to a bill in chancery, is by a *motion to have the plea set down for argument*; but the mere circumstance that the plea was set down for argument on a demurrer to it, instead of on such a motion, cannot be assigned for error.

Technical and continuing trusts, not cognizable at law, are not barred by the statute of limitations.

In cases of fraud, the statute of limitations does not begin to run until the fraud is discovered.

When a request is essential to the maintenance of a suit for the non-performance of a promise or duty, the statute of limitations does not begin to run until the request has been made.

| 4b | 77 |
|----|-----|
| 134 | 535 |

| 4b | 77 |
|----|-----|
| 149 | 461 |
| 149 | 462 |
| 149 | 465 |

| 4b | 77 |
|----|-----|
| 160 | 643 |
| 160 | 644 |

| 4b | 77 |
|----|-----|
| e161 | 272 |

| 4 b | 77 |
|----|-----|
| 16 t | 640 |

The administrator of a guardian was sued in chancery by the administrator of the ward, for money received by the guardian from the administrator of the ward's father, as part of the ward's distributive share of his father's estate; and it appeared that the guardian had given receipts for the money thus received. *Held*, that the demand was not barred by the statute of limitations.

It was *held* in this case, that the administrator of the ward's father was not a competent witness to prove that the guardian had received from the witness the money sued for.

It was also *held* that the decree for the complainant should be against the goods of the intestate, and not *de bonis propriis*.

APPEAL from the *Franklin* Probate Court.

Monday, November 30.

STEVENS, J.—This is a bill in chancery filed in the Probate Court of the county of *Franklin*, by *Jesse Simonson*, as administrator of the estate of one *Joseph Russell*, jun., deceased, against *Lewis Raymond* as administrator, and *Mary Rockafellar* as administratrix, of one *John H. Rockafellar*, deceased. The allegations of the bill are, that one *Joseph Russell*, sen. about 18 or 20 years since died, leaving a very considerable estate, and that administration of it was granted to one *John Kiger*, &c.; that the deceased left several children his legal heirs, among whom was one *Joseph Russell*, jun., at that time

an infant; that one *John H. Rockafellar* was the guardian of the person and the estate of the said infant, and as such guardian received several sums of money from the said *Kiger*, the administrator of the estate of the said *Joseph Russell*, sen., deceased, as part of the distributive share of the said *Joseph Russell*, jun., of his said father's estate; that said guardian gave receipts for all the money he so received, and those receipts are all exhibited and made a part of the bill, except one for about the sum of 10 dollars which is said to be lost or mislaid; that in the year 1827 said guardian died leaving a large and solvent estate, the administration of which was granted to the said *Mary Rockafellar* and *Lewis Raymond;* that in 1828 the said infant, *Joseph Russell*, jun. died, and administration of his estate was granted to the complainant, the said *Jesse Simonson;* that the said *John H. Rockafellar*, the said guardian, died with the funds of his ward in his hands, and all interest thereon; that he never paid any thing to the said ward, nor ever paid or expended any thing for his use, &c.; and that the said *Mary Rockafellar* the administratrix, and *Lewis Raymond* the administrator, refuse to pay the same, &c. The bill prays relief, &c.

The defendants in the Probate Court filed a plea of the statute of limitations, which the complainant demurred to, and the demurrer was sustained. Defendants then answered, saying that they admitted the death of *Joseph Russell*, sen., 18 or 20 years ago, and the appointment of said *Kiger* as administrator, &c.; that they admitted the guardianship of their intestate, *John H. Rockafellar*, the death of the guardian, and that administration of his estate was granted to them. They also admitted that their intestate's estate is solvent and able to pay, &c. But as to the amount of the estate of the said *Joseph Russell*, sen., or as to the fact of said guardian having received the estate of his ward, or any part of it, they deny having any knowledge. Nor do they know that the guardian ever paid or advanced any thing to or for his ward, &c. They admit that they have heard that the guardian once received from said *Kiger* a horse for his ward, but that report says that the horse proved to be unsound, and that it cost as much as he was worth to cure him. They neither deny nor admit the genuineness of the receipts exhibited of said guardian; that is, the answer is wholly silent as to that.

To this answer a general replication is filed, and one deposition is taken; that is the deposition of *John Kiger*, the administrator of the estate of the said *Joseph Russell*, sen., deceased, who paid the money over to the said guardian as is charged. The defendants moved to suppress the deposition on the ground of interest in *Kiger*, but the motion was overruled and the deposition was received as evidence. *Kiger* swears, directly and unequivocally, to the payment to the guardian of the several sums of money, and to the receipts, and that the small receipt of 10 or 12 dollars is lost or mislaid.

The case was heard on the bill, answer, replication, exhibits, and depositions; and the Court decreed the payment of the money and interest to the complainant, together with costs of suit by the defendants *de bonis propriis;* upon which the defendants appealed to this Court, and have assigned several errors for a reversal of the decree. These errors are as follows:

1. That it was error to permit a demurrer to be filed to a plea in chancery; that no such practice is known to the books. 2. That the plea of the statute of limitations is a good and sufficient bar to the complainant's recovery, and should have been sustained. 3. That the deposition of *Kiger* should have been rejected. 4. That the judgment should have been *de bonis testatoris*, and not *de bonis propriis*.

A demurrer to a plea in chancery is a proceeding unknown to the books. That part of the practice, however, if not regulated by statute, is generally regulated by rules of Court, and different Courts have different rules; but we have never seen or heard of a rule, that authorized the filing of a demurrer to either an answer or a plea in chancery. If an answer is defective, exceptions are filed to it; and these exceptions are, upon petition or upon motion, set down for argument, &c. Exceptions are never filed to a plea, but if the party conceive the plea to be defective, either in form or substance, he may have the plea itself set down for argument. Blake's Ch. Prac. 114.—Mitf. Plead. 367.—1 Moult. Prac. 270.—1 Newl. Prac. 117, 118. This is done either on petition or motion; if done by petition, the petition must contain the title of the cause, the time when the plea was filed, &c., and pray that it be set down for hearing, &c.; upon which the Court makes an order, and a copy of the petition and order is served on the opposite

Nov. Term, 1835.

RAYMOND
v.
SIMONSON.

party, &c. Beames' Ord. in Ch. 121.—1 Newl. Prac. 119.—1 Moult. Prac. 270.

But under our practice acts, a mode of proceeding very different from the *English* practice prevails. Our practice is less complicated, less technical, not so expensive, more direct, and less laborious, than the system of *England,* or than the systems of several of the states of this Union. The whole dilatory, troublesome, and expensive routine of notices and services of copies of pleadings, &c., laid down in the *English* and *New-York* books of practice, has been swept out of existence by a single stroke of the legislative pen. By our practice, motions and rules of Court in term time, without previous notice, are substituted for petitions and notices; and if the parties be in Court, they are bound to take notice of such motions and orders of Court, without any special notice being given them. We have demurrers, exceptions to answers, and pleas, set down for argument on motion; and the opposite party is bound to take notice of it, without the service of a special notice, if from the state of the case he is presumed to be in Court. These motions must, however, be as certain and special as petitions should be. This innovation of ours upon the practice, appears to have the sanction of some great names. The modern writers say that a motion is a verbal petition, and is in its nature a petition; but that it is generally heard and acted upon without unnecessary delay or formality; and that great delay and expense are saved to the suitors by substituting motions for petitions. Lord *Eldon* says that the practice in *England* is very much altered in that particular; that most of the business of course, which had to be done on petition, is now done upon motion; and although it is not done any better than it was formerly done on petition, and perhaps not always so well, yet that the saving to suitors in expenses and delay is very great.

In the case now before us, the Court acted without any authority to sustain them; but the error committed was in mere matter of form, and in no sense of the word can it be said that the interest of either party was either delayed or affected by it, if the decision as to the sufficiency of the plea is correct. The demurrer, although without the sanction of any rule of practice, may be considered as a substitute for a motion to have the plea set down for argument; and as it was set down

and argued accordingly; and upon that argument a decision had, we cannot see that any harm is done (1).

The objection respecting the statute of limitations is not clear of doubt. The numberless inconveniences which would arise from persons being at liberty to set up demands at any distance of time, have induced legislative bodies, very wisely, to prescribe the time within which certain rights must be pursued; and in such cases length of time operates as an absolute bar. Such statutes have been pronounced by the most enlightened tribunals wise and salutary, and have been liberally construed, and extended to Courts of equity, although the enactments upon their face are not, in terms, applicable to those Courts. Both Courts however, in *England* as well as *America*, permit such statutes to be pleaded in bar to various species of claims and actions. But still there are many cases to which these provisions do not extend, and to which, in justice and *good* conscience, they cannot be extended; and in such cases the lapse of time cannot be pleaded as an absolute bar; although, in numerous instances, it operates as a presumption or evidence of the right claimed having been extinguished or lost, or the demand satisfied. The general rule, however, that the statute of limitations is a bar to suits in equity, as well as actions at law, has its limits. It is opposed by another general rule, that in cases of frauds and trusts, the statute of limitations does not run.

The trusts coming within this rule are direct trusts; technical and continuing trusts, which are not cognisable at law, but which are mere creatures of a Court of equity, and fall within the proper and exclusive jurisdiction of chancery. There are numerous eventual and possible trusts, that are raised by implication of law and otherwise, that fall within the controul of the statute. Every deposite is a trust; every person who holds money to be paid to another, or to be applied to any particular and specific purpose, is a trustee, and may be sued either at law or in equity. Contracts of bailment are express and direct trusts, but these are all within the statute. The sound rule then is, that the trusts not reached or affected in equity by the statute of limitations, are technical and continuing trusts, of which Courts of law have no cognisance. *Decouche* v. *Savetier*, 3 Johns. C. R. 190.—1 Fonb. Eq. 246, note.—*Kane* v. *Bloodgood*, 7 Johns. C. R. 90. So long as such

11

Nov. Term, 1835.

RAYMOND
v.
SIMONSON

Nov. Term, 1835.

RAYMOND
v.
SIMONSON.

a trust as that is continuing as a trust, acknowledged or acted upon by the parties, the statute cannot apply; but so soon as the trustee denies the right of his *cestui que trust*, and his possession becomes adverse, lapse of time from that period may constitute a bar in equity. *Kane* v. *Bloodgood*, 7 Johns. C. R. 90.—*Decouche* v. *Savetier*, 3 Johns. C. R. 190.—*Lloyd* v. *Gordon*, 2 Harr. & M'Hen. 254. So in the case of tenants in common. The statute of limitations does not run in favour of one tenant in common against another, unless there be an actual ouster and adverse possession. *Doe* v. *Prosser*, Cowp. 217.—*Vandyck* v. *Van Beuren*, 1 Caines, 90.—*Coleman* v. *Hutchenson*, 3 Bibb, 209.—*M'Clung* v. *Ross*, 5 Wheat. 116.

Lord *Redesdale*, in the case of *Hovenden* v. Lord *Annesley*, 2 Sch. & Lef. 630, says, if the trustee is in possession and does not execute his trust, the possession of the trustee is the possession of the *cestui que trust;* and if the only circumstance be that the trustee, from mere negligence or unwillingness, does not perform his trust, his possession will not operate as a bar; because his possession agrees with his title, and also with the rights of the *cestui que trust.* And Chancellor *Kent*, in the case of *Kane* v. *Bloodgood*, says, that if the *cestui que trust* demands the trust fund of the trustee, and the trustee denies his title and upon that ground refuses to perform, the possession of the trustee from that time becomes adverse, and the statute begins to run. It is also stated by Sir *William Grant* in several cases, that time does not bar a direct trust as between trustee and *cestui que trust*, upon the precise same principle that applies at common law to tenants in common, where the statute does not run but from the time of actual ouster, because the possession of the one is not adverse to the rights of the other, but is in support of the common title. It does not bar, so long as the trust is continuing and acknowledged. In the case of *Harmood* v. *Oglander*, 6 Ves. 199, 8 id. 106, it was considered by Lord *Alvanley*, and afterwards repeated by Lord *Eldon*, that if a trust subsisted so that the trustee could recover as having the legal estate, it would follow that the right of the *cestui que trust*, as against the trustee, could not be barred. But supposing the trustee were to deny the right of his *cestui que trust* and assume absolute ownership, is there any case in equity that would allow the latter his remedy, beyond the period limited for the recovery of legal estates at law? So

long as the trust is a subsisting one, and is admitted by the acts or by the declarations of the parties, no doubt the statute does not affect it; but when such transactions take place between the trustee and *cestui que trust*, as would in the case of tenants in common amount to an ouster of one of them by the others, the statute would begin to run. Such a trust would then stand on the same footing that constructive trusts, cases of detected fraud, and all other cases in which the statute is assumed as a rule of decision, stand on.

Again, where there is a legal as well as an equitable remedy in respect of the same subject matter, the statute is a good bar in both Courts. *Roosevelt* v. *Mark*, 6 Johns. C. R. 266.—*Kane* v. *Bloodgood*, 7 Johns. C. R. 90. Lord *Macclesfield*, in the case of *Lockey* v. *Lockey*, Prec. in Ch. 518, says, that where a trustee receives the profits of an infant's estate merely as receiver, and the infant after he arrives at a majority permits six years to elapse before he brings suit, the statute of limitations is a good bar in equity to his claim, for he had a remedy at law as well as in equity, and his legal remedy being barred, his equitable interest is also barred; that such a trust as that is not a mere creature of a Court of chancery, and not cognisable by Courts of law. Lord *Camden*, in the case of *Smith* v. *Clay*, 3 Bro. 639, *n.*, says, that whenever the legislature limits the time of actions and remedies to a certain period in legal proceedings, the Court of chancery adopts the same rule, and applies it to similar cases in equity; and in all cases where there is a legal remedy, and that has been barred by the statute, the equitable right to the same thing is barred in chancery. Again, in *Harmood* v. *Oglander*, the same principle is recognised. In the case of *Bond* v. *Hopkins*, 1 Sch. & Lef. 413, Lord *Redesdale* says, that the statute of limitations does not apply, in terms, to proceedings in Courts of equity, but if the equitable title is not put in suit until the legal title is barred, chancery will not relieve. Afterwards, in the case of *Hovenden* v. Lord *Annesley*, he again says, that if the legal title be not acted upon until it is barred, equity will not relieve. In the case of *Beckford* v. *Wade*, 17 Ves. 87, the Master of the Rolls says, that the statute loses its operation only in respect to cases of trust, for which there is no remedy but in a Court of equity. Lord *Hardwicke*, in the case of *Sturt* v. *Mellish*, says, that a trust which is unaffected by a statute of limitations, is

Nov. Term,
1835.

RAYMOND
v.
SIMONSON.

where there is such a confidence between parties that no action at law will lie, but is a mere case for the consideration of equity. 2 Atk. 610. Vide, also, *Townshend* v. *Townshend*, 1 Cox's Ch. C. 28.

It is well settled in *England*, that the statute of limitations does not affect or apply to legacies or distributive shares of heirs, and that the remedy to enforce payment must be sought in chancery; that the jurisdiction of equity in those cases is exclusive of law. The same doctrine appears to be adopted in several of the states of this Union. *Ward* v. *Reeder*, 2 Harr. & M'Hen. 154.—*Irby* v. *M'Crae*, 4 Des. 432.—*Durdon* v. *Gaskill*, 2 Yeates, 268. The same principle was adopted and decided in the state of *New-York* by Chancellor *Kent*, in the case of *Decouche* v. *Savetier*. But that case, subsequently, was very much doubted by the Chancellor himself. In the case of *Kane* v. *Bloodgood*, he says that he made the decision in the case of *Decouche* v. *Savetier* in conformity to the *English* rule, without sufficient reflection as to its applicability to the laws of the state. In that state he says, there is a legal remedy provided by an action at law in such cases, which creates a concurrent jurisdiction; and according to established principles, the statute in such cases can be pleaded in either Court. And, afterwards, the Supreme Court overruled the decision in the case of *Decouche* v. *Savetier*, and declared that each Court had, in cases of legacies and distributive shares, concurrent jurisdiction; and that the statute of limitations could be pleaded in either Court.

We will not, however, at this time, pursue this perplexing subject any further. Enough has been said to show the governing land-marks in these cases, and to show that the wisest of judges have had much trouble in wading through the labyrinth of difficulties, discriminations, technicalities, and shades, that have gathered around the statute of limitations. The case before us can be satisfactorily disposed of, by applying the facts of the case to a few well settled rules.

It is a rule about which there is now no controversy, that the statute never begins to run until the party's cause of action has accrued and is ripe for suit, and until he is capable in law to sue and be sued, &c. The general principle is well settled, that the statute does not affect frauds; but still that rule has its limits. In cases of frauds, the statute begins to

run from the time that the fraud is so fully developed and dis-closed, as to enable the injured party to see the nature and the extent of the fraud committed. The statute in good con-science cannot run until the party has a right to commence his suit, and that right cannot accrue in the case of fraud, until the injured party is informed of the injury done or fraud committed. *Kane* v. *Bloodgood*, 7 Johns. C. R. 122.—*South Sea Company* v. *Wymondsell*, 3 P. Will. 143. — *Croft* v. *Townsend's* Admr's., 3 Des. 239.— *Wamburzee* v. *Kennedy*, 4 Des. 474.—1 Fonb. Eq. 262, notes.—12 Petersd. Abr. 342. When a promise or a duty is executory, and is not to be performed or done until request, the statute never begins to run until the request is made. 12 Petersd. Abr. 341. In the case now before us, there is nothing by which we can know when the ward became of age, and was capable in law of suing. It is highly probable from what is shown, that he died a minor, and that no action ever accrued to him in his life time; therefore the statute could not commence running until the cause of action accrued, and the party was capable in law of suing. Administration of his estate was granted to the complainant in *August*, 1828, and no cause of action could accrue to him until a demand of payment was made. The statute could not commence running until after the demand was made, because it was an executory trust, and no cause of action could arise either to the ward or his administrator, until demand made. The demand appears not to have been made until a few days before the suit was brought. These facts, however, would have been matters of proof, if issue had been taken on the plea.

But be these facts as they may, the claim in this case does not come within the statute, and is not subject to its limitation even in a Court of law. The statute provides that it shall not be pleaded in bar of, or operate as a bar to, any action founded on an instrument or a contract in writing. This suit is bot-tomed on written receipts. These receipts are very special; they clearly show the trust and acknowledge the claim. They distinctly state that he, *John H. Rockafellar* the guardian, re-ceived these several sums of money of the said administrator *Kiger*, for the use of the said *Joseph Russell*, as guardian for him the said *Joseph*, &c.; and they are duly signed with the proper hand and name of the said *John H. Rockafellar*. These

Nov. Term, 1835.

RAYMOND. v. SIMONSON.

receipts are without controversy instruments in writing, within the saving clause of the statute.

The third objection is, that the deposition of *Kiger* should have been rejected on the ground of interest. The appellants argue that inasmuch as *Kiger* was administrator of the estate out of which the *cestui que trust* claims his distributive share, and had the funds in his hands, and still will be liable for them unless it be established that he has paid them to this guardian, he is directly interested, and should not be allowed by his own oath to clear his skirts of the burthen, and bind it on the shoulders of another. This objection presents some difficulty. The rules to be found at different periods, in the books on the subject of incompetency by reason of interest, have frequently changed, and therefore present rather a strange confliction of judicial reasoning. In the case of *Bent* v. *Baker*, 3 Term Rep. 27, Chief Justice *Kenyon* said, that there had been various opinions on the subject, and that it was impossible to reconcile all the cases; that all the Court could do in any case, was to consider what the general principles and good sense of the numerous decisions were, and extract from them a rule. He added, that he thought the true principle was, if the proceedings in the cause could not be used as evidence for or against the witness, that he was competent, although his interest and wishes in the question might be ever so strong; that such interest and prejudice should go to his credibility and not to his competency. No rule, however, can be more reasonable and salutary, than that which requires the testimony by which any fact is to be established, to be free from that bias which an interest in the event might even imperceptibly give to the mind of the witness; but this rule although so admirable in its principle, is perhaps of all rules the most flexible in its application. The voice of nature may be supposed to give a bias to the testimony of those who stand within the ties and influence of any of the domestic relations, and particularly that of parent and child; but such testimony is not rejected: it is a consideration which does not disqualify the witness, however it may weigh as to his credibility. The law conceives the claims of truth to be sufficiently strong to repress the most powerful feelings of nature, and the most powerful dictates of love and affection, existing even between parent and child; yet it will not trust the in-

terests of justice to the influence which the smallest actual or supposed pecuniary benefit may excite.

Nov. Term, 1835.

The old rule was, that a mere supposed or imagined interest, although in fact there might be no interest, would be sufficient to disqualify a witness. *Fotheringham* v. *Greenwood*, 1 Str. Rep. 129.—*Richardson's* Ex'or. v. *Hunt*, 2 Munf. 148.— *M'Veaugh* v. *Goods*, 1 Dall. 62.—*Innis* v. *Miller*, 2 Dall. 50. In more modern times that rule has been maturely considered; the light of reason has been brought forward in aid of it, and it has undergone a great change. It appears to be now settled, that no interest will disqualify but an actual interest in the cause that can be enforced. It must be direct and such as immediately benefits or injures him; the record of which may be used as evidence for or against him, in any action to which he may afterwards be a party; or the record of which may create a new responsibility, which the law would recognise and render available either for or against the witness. In the case of *Twambly* v. *Henley*, 4 Mass. 441, Judge *Parsons* says, if the verdict will be evidence for or against the witness, it is an interest that will exclude him. Again, in the case of *Bliss* v. *Thompson*, 4 Mass. 488, the same great luminary of the law recognises and re-asserts the principle, that if the verdict can be used as evidence for or against the witness, it will exclude his testimony. In the case of *Van Nuys* v. *Terhune*, 3 Johns. Cas. 83, the Court says the rule by which a witness is excluded on the ground of interest, seems to have fluctuated at different periods, but on a careful examination of all the authorities as well ancient as modern, the general rule may be said to be, that if the verdict cannot be given in evidence for or against the witness in any other suit, the objection goes to his credit and not to his competency.

RAYMOND
v.
SIMONSON.

The case of *Hayes* v. *Grier*, 4 Binn. 83, is directly in all its particulars, in principle and substance, like the one under consideration. The plaintiff, *Hayes*, was the treasurer of the county of *Lycoming*, and he brought an action against *Grier*, the defendant, for a sum of money which was due to the county for taxes from one *Phineas Bond*, the collector; which sum of money had been paid over to *Grier*, the defendant, by Mr. *Bond* the collector, by the directions of the plaintiff, for the use of and in trust for the county, and *Grier*, the defendant, had failed to pay it over to the county. The plaintiff attempt-

Nov. Term, 1835.

RAYMOND
v.
SIMONSON.

ed to prove that the money had been paid to the trustee *Grier*, the defendant, by the said *Bond* the collector; but *Bond's* testimony was objected to on the ground of interest. The Court said that the rule on the subject was this:—If the verdict can be used as evidence for or against the witness in any subsequent suit that may be brought against him, or if the witness will be immediately benefited or injured by the event of the suit, it is an interest that excludes his testimony. Now, added the Court, Mr. *Bond's* testimony in the case tends immediately to discharge him from these taxes; for if the treasurer recover the amount from the defendant *Grier*, the claim will be satisfied; and if a suit should be subsequently brought against Mr. *Bond* for the money, the verdict in this case may be given in evidence in discharge of Mr. *Bond's* liability. Mr. *Bond's* evidence was therefore rejected.

From this view of the case, we are satisfied that the deposition of *Kiger* should have been rejected. He was the first holder of the trust fund, and is still liable for it, unless he has paid it to the *cestui que trust*, or to his guardian. His testimony goes directly to discharge himself from that liability, and the decree in this case may be given in evidence by him, in any suit which may hereafter be brought against him on that claim.

The fourth and last error is, that the decree should have been *de bonis testatoris* and not *de bonis propriis*. This error is also well assigned. The decree should have been *de bonis testatoris*.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, &c.

*J. Ryman*, for the appellants.
*G. Holland*, for the appellee.

(1) In *England*, it is a general rule that the *defendant* should set down the plea to be argued within eight days after it is filed, or it will stand overruled as put in for delay. Gilb. Ch. 54.—2 Madd. 295.—1 Newl. Ch. Pr. 119. There are, however, a few pleas, viz. outlawry, excommunication, a former decree, and another suit pending, which need not be set down by the defendant for argument. These pleas are presumed to be sufficient; and it is therefore for the *plaintiff*, if he has any objection to their sufficiency, to set them down for argument. 1 Newl. Ch. Pr. 118, 119.—Gilb. Ch. 54, 55. It is also said that if the plaintiff in any other case think the plea defective either in form or substance, he may set it down to be argued. Beames' Pl. 324.—Mitf. 301. The

plea being thus set down by either party, the question whether it be sufficient or not, either in form or substance, is argued and determined.

The Court may either allow the plea simply, or save the benefit of it to the hearing, or order it to stand for an answer, or overrule it. If the plea be allowed, the plaintiff has the same right to reply to it and thus put the defendant to the proof of it, which he had previously to the allowance. If the plea be overruled, the defendant may file his answer to the bill; and, so far as relates to the subject of relief, the same matter that the plea contained may be insisted upon by way of answer. Mitf. 16, 306.—Story's Eq. Pl. 468, 9. If the plea be overruled merely in consequence of an evident mistake in it, and the Court consider the ground of defence good, leave may be given to amend. Beames, 328.—Story's Eq. Pl. 545.

In *New-York* and *New-Jersey*, the party pleading or demurring must, within three weeks after filing the plea or demurrer, set the same down for argument at the next term. Note (*a*) to Beames' Pl. Am. Ed. 324.

In the Supreme Court of the *United States*, the plaintiff may set down the demurrer or plea to be argued, or he may take issue on the plea. If a plea or demurrer be overruled, no other plea or demurrer shall be thereafter received; but the defendant shall proceed to answer the bill, and if he fail to do so within two calendar months, the same, or so much thereof as was covered by the plea or demurrer, may be taken for confessed, and the matter thereof be decreed accordingly. If the plaintiff shall not reply to or set for hearing any plea or demurrer, before the second term of the Court after filing the same, the bill may be dismissed with costs. Upon a plea or demurrer being argued and overruled, costs shall be paid as where an answer is adjudged insufficient; but if adjudged good, the defendant shall have his costs. The defendant, instead of filing a formal demurrer or plea, may insist in his answer on any special matter applicable to the merits, and have the same benefit thereof, as if he had pleaded the same matter, or had demurred to the bill. 7 Wheat. X. Rules of Practice.—1 Sumn. 578.—11 Peters, 351.

The circumstance that the plaintiff has set down the plea for argument, does not preclude him from moving to reject it, or to have it taken off the files, on the ground of its not being verified by affidavit. *Wall* v. *Stubbs*, 2 Ves. & Bea. 354. But the motion must be made previously to the argument as to the sufficiency of the plea. *Heartt* v. *Corning*, 3 Paige, 566. The pleas required to be verified by affidavit are pleas in bar of matters *in pais*; but pleas to the jurisdiction of the Court, or disability of the person of the plaintiff, or pleas in bar of any matter of record, or of matters recorded, or as of record in the Court itself, or any other Court, need not be upon oath. Mitf. 301.—Story's Eq. Pl. 541.