Jones, Executor, v. Henderson *et al.*

JONES, EXECUTOR, *v.* HENDERSON ET AL.

[No. 18,016.    Filed February 16, 1898.]

APPEAL AND ERROR.—*Appeal Bond.*—*Motion to Dismiss for Failure to File.*—*Delay.*—*Waiver.*—Where a motion to dismiss an appeal on account of failure of appellant to file an appeal bond is delayed until a year has elapsed from the rendition of the judgment appealed from, and until after appellees have joined in error and filed briefs upon the merits of the appeal, such conduct will constitute a waiver of the right to move for the dismissal.  *p. 459.*

LIMITATION OF ACTIONS.—*Trusts.*—Express or direct and continuing trusts are not within the statute of limitations.  *p. 461.*

SAME.—*Trusts.*—*Action to Recover Trust Funds.*—A trust deed or mortgage executed by a water works company to trustees, conditioned that all money that the trustees at any time might derive from any of the mortgaged property or "from the foreclosure and sale thereof shall be held by them as trustees for the benefit of all bondholders of said bonds *pro rata*" created a trust relation, not only as to the property and the foreclosure of the mortgage, but also as to the reception and holding of the proceeds of the sale under such foreclosure, and while such relation existed the possession of the trustees is regarded as that of the *cestuis que trust* and the statute of limitation will not operate as a bar to an action by the *cestuis que trust* for the recovery of such funds. *pp. 459-466.*

SAME.—*Trusts.*—*Laches.*—Laches by a *cestui que trust* to constitute a bar to an action against the trustee for the recovery of the trust funds arises from conduct inconsistent with the existence of the trust, or the continuance of the trust relationship, and never obtains where the existence and continuance of the trust are undoubted. *p. 466.*

From the Marion Superior Court.    *Reversed.*

*S. N. Chambers, S. O. Pickens, C. W. Moores,* and *Pirtle & Grabue,* for appellant.

*Ferdinand Winters,* for appellees.

HACKNEY, J.—This was a suit by the appellant against the appellees, as heirs at law and devisees of William Henderson, deceased, to enforce a debt of said decedent against the property received by them from the estate of said decedent.    The first question

before us arises upon the motion of the appellees to dismiss the appeal for the reason that no appeal bond was filed. No question is made but that the appeal was under the act for the settlement of decedent's estates. Section 2609 *et seq.*, Burns' R. S. 1894 (2454 *et seq.*, Horner's R. S. 1897). Ordinarily, the failure to give bond as required by said act is cause for the dismissal of the appeal. *Harrison Nat'l Bank* v. *Culbertson*, 147 Ind. 611; *Beaty* v. *Vories*, 138 Ind. 265; *Galentine* v. *Wood*, 137 Ind. 532; *Webb* v. *Simpson*, 105 Ind. 327.

The motion in this case was not filed until after the appellees had joined in error, had filed briefs upon the merits of the appeal, and had delayed more than one year from the rendition of the judgment appealed from. Such conduct has been held a waiver of the right to move for a dismissal of the appeal. *State* v. *Walters*, 64 Ind. 226; *West* v. *Cavins*, 74 Ind. 265; *Gilbert* v. *Welsch*, 75 Ind. 557; *Bender* v. *Wampler*, 84 Ind. 172; *Hillenberg* v. *Bennett*, 88 Ind. 540; Elliott's App. Proc., sections 249, 376; Ency. Pl. and Prac., p. 1000. The only Indiana case at variance with the authorities cited is that of *Ten Brook* v. *Maxwell*, 5 Ind. App. 353, which was decided without reference to the decisions of this court upon the question. In some courts it is held, in accordance with the case just cited, that the bond is jurisdictional, and may not be waived. That rule, however, is not in harmony with our numerous holdings. The motion must therefore be denied.

The remaining question is upon the action of the court in overruling the appellant's demurrer to the answer of the appellees pleading the six years statute of limitation. The complaint alleged that in June, 1870, William Henderson and James M. Ray were constituted trustees for the bondholders under a trust deed or mortgage executed by the Water Works Com-

pany of Indianapolis; that the bonds, to the amount of $350,000.00, were made payable to said named trustees, with interest payable semiannually, and due in July, 1890, and were secured by said trust deed or mortgage; that three of said bonds, each for the sum of $1,000.00, and numbered, respectively, 166, 167, 168, became and continued the property of the appellant's testator; that Ray died in 1880, leaving Henderson as the sole trustee; that in March, 1881, default having been made in the payment of the interest on the bonds, and Henderson, as such trustee, having instituted suit upon said bonds and to foreclose said mortgage, according to the stipulations of said mortgage, obtained judgment upon all of said bonds, including those held by the appellant's testator, and a decree foreclosing said mortgage; that the mortgaged property was sold to satisfy said decree, and, on the 20th day of April, 1881, the proceeds of the sale were paid to said Henderson, trustee, including $12,608.62, the amount due upon bonds numbered 166, 167, 168, and eight other bonds not delivered up for cancellation.

One of the stipulations of said mortgage, as to said trustees, was that "all money that they may at any time derive * * * * from the foreclosure and sale" of said property, "shall be held by them as trustees for the benefit of the holders of said bonds pro rata, and shall be apportioned and paid to them accordingly."

At the time of the receipt of said sum from the sheriff said Henderson executed receipts in writing, acknowledging the receipt of said special sum in full and on account of said eleven bonds, signing said receipts, respectively, "W. Henderson, trustee," and "W. Henderson, trustee W. W. Co." It was alleged that Henderson held, until his death, the proportion of said sum owing upon said bonds 166, 167, and 168, and

that the same was never paid to appellant's testator, who, during his lifetime resided in the state of Kentucky, and who died in January, 1892, in said state; that Henderson's estate was settled in March, 1895, and money and property sufficient to pay appellant's demand was received from said estate by the appellees.

Do these facts present a demand subject to the statute of limitations? For the appellant it is contended that the trust relation created by the deed or mortgage was not subject to the statutory limitation, while the appellees insist that, as to the proceeds of the sale, there was no trust relation; that Henderson became a debtor, in the ordinary sense, to the bondholders, which gave only an action at law for money had and received; and that, if a trust relation existed, it was such as was subject to the statute of limitations.

One proposition thoroughly settled is that express or direct and continuing trusts are not within the statutes of limitation. Beach Mod. Eq., section 155; 13 Am. and Eng. Ency. of Law, page 683; *Raymond* v. *Simonson*, 4 Blackf. 77; *Smith* v. *Calloway*, 7 Blackf. 86; *Albert* v. *State, ex rel.*, 65 Ind. 413; *Board, etc.*, v. *State, ex rel.*, 103 Ind. 497; *Thomas, Admr.*, v. *Merry*, 113 Ind. 83; *Langsdale* v. *Woollen*, 99 Ind. 575; *State, ex rel.*, v. *Board, etc.*, 90 Ind. 359; *Parks* v. *Sattertwaite*, 132 Ind. 411; *Peebles* v. *Green*, 6 Lea. (Tenn.) 471; *Speidell* v. *Henrici*, 15 Fed. 753, n. p. 758; 1 Am. Jur. (N. S.), p. 349; 2 Perry on Trusts, section 863; *Talbott, Admr.*, v. *Barber*, 11 Ind. App. 1; *Jackson* v. *Landers*, 134 Ind. 529.

In 13 Am. and Eng. Ency. of Law, *supra*, it is announced as "a well established rule that as between a trustee of an express trust and his *cestui que trust*, 'no statute of limitations nor any bar by analogy to the statute can be relied on,'."citing many authorities.

In Beach Mod. Eq., *supra*, it is said "length of time is no bar to a trust clearly established, and express trusts are not within the statute of limitations, because the possession of the trustee is presumed to be the possession of his *cestui que trust*." In *Raymond* v. *Simonson*, *supra*, it is said, "The sound rule then is, that the trusts not reached or affected in equity by the statute of limitations, are technical and continuing trusts, of which courts of law have no cognizance."

Some of the authorities cited, and many others declare the trust so exempt from the statute of limitations to be those of exclusive equitable cognizance, or that, where the remedy of the *cestui que trust* is alike subject to enforcement at law and in equity, the latter jurisdiction will apply the limitations applicable in the former.

Another exception to the general rule, affirmed in the authorities cited, is that where there has been an open denial of the trust by the trustee, and notice thereof to the *cestui que trust*, the statutory limitation will be applied as beginning with the time of such denial and notice. This exception, however, finds its support in the conclusion that the trust relation no longer continues, since it is of the essence of the rule stated that the trust is a continuing one.

The first of these two exceptions to the general rule, stated to exist where the *cestui que trust* has concurrent remedies at law and in equity, has application only where the trust, being an express trust, has been discontinued, or the remedy sought is not the enforcement of such trust or its incidents. That the statute, to become a bar, depends upon the broken continuity of the trust, was expressly recognized by this court in *Albert* v. *State*, *supra; Parks* v. *Satterthwaite*, *supra; Raymond* v. *Simonson*, *supra*, and other cases. In the last cited case it was said: "So long as such a trust as that

is continuing as a trust, acknowledged or acted on by the parties, the statute cannot apply."

This is proved by the indisputable rule that the enforcement of such trusts is of exclusive equitable cognizance, and never exists concurrently at law and in equity. As said in 27 Am. and Eng. Ency. of Law, p. 271, "The enforcement of trusts and many of the rights incident thereto is, of necessity, altogether within the jurisdiction of courts of equity; indeed, it is difficult to conceive of a case directly involving the administration of a trust of which a court of common law could properly take cognizance. The execution and enforcement of trusts and trust obligations, the adjustment of disputed rights under them, the investigation and settlement of accounts between parties in confidential relations, the establishing of the existence of a fiduciary relationship, are questions which fall naturally within the primary and exclusive jurisdiction of the chancery courts," citing many authorities.

A *cestui que trust* cannot maintain an action at law against a trustee while the trust is still open. His only remedy is by bill in equity. *Davis* v. *Coburn,* 128 Mass. 377. The jurisdiction of chancery over trusts can be taken away only by showing a complete execution of the trust. *Jordan* v. *Jordan,* 2 L. Repos. (N. C.) 292. See, also, to the same effect, *Thomas* v. *American, etc., Co.,* 47 Fed. 550; *New England, etc., Co.* v. *Gay,* 33 Fed. 636; *Alexander* v. *Mortgage Co.,* 47 Fed. 131; *Coates* v. *Woodworth,* 13 Ill. 654; *Haywood* v. *Ensley,* 8 Hump. (Tenn.) 460; *Brown* v. *Wright,* 4 Yerg. (Tenn.) 57; *Trustees of McIntire, etc.,* v. *Zanesville, etc., Co.,* 9 Ohio 203; *Duvall* v. *Craig,* 2 Wheat. (U. S.) 45; *Parks* v. *Sattertwaite, supra.*

There is no pretense in this case that the trust, if one existed in the holding of the proceeds of the sale, was ever repudiated, or otherwise discontinued, and

it would, therefore, not fall within either of said exceptions to the general rule stated. Was there an express continuing trust, as to the holding of said funds, Henderson being the trustee, and the bondholder the *cestui que trust?* The deed or mortgage expressly stipulated that all moneys that the trustees might at any time derive from any of the mortgage property or "from the foreclosure and sale thereof, shall be held by them as trustees for the benefit of all bondholders of said bonds *pro rata*, and shall be apportioned and paid by them accordingly." The receipts to the sheriff, designating the bonds of appellant's testator, were by Henderson as trustee.

Little doubt can exist that the object of the parties in creating a trustee for the bondholders was that their interests in the collection of the mortgage indebtedness, and the retention, preservation, and final distribution of the fund, might be protected and accomplished without calling together and securing united action by the bondholders individually.

As little doubt can exist that the language of the instrument created a trust relation not only as to the property and the foreclosure of the mortgage, but also as to the reception and holding of the fund. That relation is not shown to have discontinued. Counsel do not contend that it was ever discontinued, and it would be most difficult, under the facts before us, to point to a time when it ceased. "And while the relation of trustee and *cestui que trust* continues unbroken, the possession of the trustee is regarded as that of the *cestui que trust.*" In the very nature of such relation, and under this presumptive possession, the statute of limitations could not run.

The beneficiary cannot be said to have slept upon his rights to relief against a trustee in a court of equity until a position of antagonism or defiance of

his rights has, with his knowledge, been assumed by the trustee; and the mere retention of a portion of the income of the trust fund by the latter, with the consent of the beneficiary, and without any claim of right, does not produce such hostile attitude. *Dyer* v. *Waters,* 46 N. J. Eq. 484, 19 Atl. 129; *Crisfield* v. *State,* 55 Md. 192. In the latter case it was said: "The fact that money due to a *cestui que trust* is allowed to remain in the hands of a trustee with the consent of the *cestui que trust,* does not change the nature of the debt itself. It still remains a debt due by the trustee in his character as trustee."

In *Raymond* v. *Simonson, supra,* the following proposition and authorities were stated and cited with approval: "Lord Redsdale, in the case of *Hovenden* v. *Lord Annesley,* 2 Sch. & Lef. 630, says, that if the trustee is in possession and does not execute his trust, the possession of the trustee is the possession of the *cestui que trust;* and if the only circumstance be that the trustee, from mere negligence or unwillingness, does not perform his trust, his possession will not operate as a bar; because his possession agrees with his title, and also with the rights of the *cestui que trust.* * * * * It is also stated by Sir William Grant in several cases, that time does not bar a direct trust as between the trustee and the *cestui que trust,* upon the precise same principle that applies at common law to tenants in common, where the statute does not run but from the time of actual ouster, because the possession of the one is not adverse to the rights of the other, but is in support of the common title."

In *Havens* v. *Church,* 104 Mich. 135, 62 N. W. 149, where moneys were held upon agreement to remove an incumbrance from lands, or pay them to the purchaser of the lands when he should pay the incum-

brance, it was held that such moneys were held in trust, and that the statute of limitations would not begin to run until an accounting was called for.

· It is earnestly insisted also by the appellees' learned counsel that laches is an equitable bar to the suit of the appellant. No affirmative pleading by the appellees sets up this form of estoppel, and, if we were permitted to carry the demurrer to the answers back to the complaint, we could not say that facts did not exist in favor of the appellant excusing the delay. However, from the authorities already cited, we are impressed that the laches which courts of equity accept as a bar arises from conduct inconsistent with the existence of a trust, or the continuance of a trust relationship, and never obtains where the existence and the continuance of the trust are undoubted. Any other rule would be at war with the conclusions that, as long as the trust relation continues, the possession of the trustee is the possession of the *cestui que trust.*

The judgment of the lower court is reversed, with instructions to sustain appellant's demurrer to appellees' answer.