The Indianapolis and St. Louis Railroad Co. *v.* Stout, Administrator.

THE INDIANAPOLIS & ST. LOUIS RAILROAD CO. *v.* STOUT, ADMINISTRATOR.

RAILROAD.—*Injury to Person.*—*Pleading.*—A paragraph of complaint by an administrator against a railroad company charging gross negligence in the construction of a crossing of the railroad over a certain public highway, and that such negligent and defective construction of said crossing caused injuries, which resulted in the death of the plaintiff's intestate, was held sufficient; and another paragraph of said complaint, charging negligence in the construction of the railroad at said crossing, and also in the running of a train on the defendant's road, by which said injuries were caused, was held to be unquestionably good.

ABATEMENT OF ACTION.—*Injury to Person.*—*Action for Death Caused by Wrongful Act.*—An action for damages for an injury to the person of the plaintiff abates by his death, and the pendency thereof cannot be pleaded in bar of an action brought by his personal representative for his death resulting from such injury and caused by the wrongful act or omission of the defendant.

PRACTICE.—*Judgment on Special Finding, Notwithstanding General Verdict.*—Special findings in answer to interrogatories override the general verdict only when both cannot stand; and the Supreme Court will not direct judgment in favor of a party against whom the general verdict has been rendered, unless this antagonism is apparent on the face of the record and

the special finding cannot, by any hypothesis, be reconciled with the general verdict.

SAME.—*Construction of Section 337 of the Code.*—The inconsistency contemplated by section 337 of the code, because of which the special finding shall control the general verdict, is the inconsistency of the special finding of facts, taken as a whole, with the general verdict, or the exclusion, by the facts found in one or more of the answers to interrogatories, of every conclusion that will authorize the general verdict.

NEW TRIAL.—*Evidence.—Special Finding.*—A new trial will be granted for want of evidence to support a special finding of facts by the jury in answer to interrogatories, only when it would be granted for insufficiency of the evidence to support the general verdict.

INSTRUCTIONS TO JURY.—*Refusal of.*—There is no error in the refusal of the court to give to the jury an instruction asked by a party, where the substance thereof is included in instructions given.

SAME.—*Assumption of Fact Admitted by Pleading.*—Where, in an action by an administrator, the defendant by his answer has admitted the character in which the plaintiff sues, the defendant cannot object to an instruction to the jury because it assumes the death of the plaintiff's intestate.

NEGLIGENCE.—*Death Caused by Wrongful Act.—Unusual Care.*—In an action to recover damages for the death of a person caused by the wrongful act of the defendant, it was held that the failure of such person to be cool and collected, and to act with perfect prudence and in the exercise of a deliberate judgment, in the presence of an unexpected and deadly danger—to take *unusual* care—constituted no defence to such action.

NEW TRIAL.—*Demurrer.*—Error in ruling upon a demurrer to a pleading cannot be a cause for a new trial.

EVIDENCE.—*Proof of Testimony of Deceased Witness.*—On the trial of an action brought by an administrator to recover damages for the death of his intestate caused by the wrongful act of the defendant, evidence is admissible to prove what was the testimony of witnesses, since deceased, on the trial of an action brought by said intestate, and abated by his death, for damages for injuries caused by said wrongful act.

DEPOSITION.—*Residence of Witness.*—The deposition of a witness, who at the time of the taking of the deposition resided in another state, was properly excluded upon proof that at the time of the trial he was residing in this State, in a county adjoining that in which the trial was had.

INTERROGATORIES TO JURY.—*Motion to Require More Specific Answers.*—There is no error in refusing to require the jury to make their answer to an interrogatory more certain and specific, where such answer, if made more certain and specific, could not control the general verdict.

From the Hendricks Circuit Court.

*M. A. Osborn* and *W. A. Brown*, for appellant.

*C. P. Jacobs*, for appellee.

BUSKIRK, J.—The appellee, as administrator of the estate of Peter Stout, deceased, brought this action in the Marion Circuit Court, to recover from the appellant damages resulting from alleged wrongful acts of the appellant, which caused the death of the said Peter Stout.

The venue was changed to Hendricks county, where a trial by a jury resulted in a verdict in favor of the appellee in the sum of two thousand five hundred dollars. The motion for a new trial was overruled, and there was judgment on the verdict.

The first error assigned calls in question the sufficiency of the complaint. The complaint was in two paragraphs. The first paragraph charged gross negligence in the construction of the crossing of the railroad over the Indianapolis and Rockville State road, west of Indianapolis, and that such negligent and defective construction of said crossing caused the injuries which resulted in the death of the appellee's intestate.

The second paragraph charged negligence in the construction of the railroad at the crossing of the Indianapolis and Rockville State road, and also in the running of the train on appellant's road.

We think the first paragraph was good. *Mackay* v. *N. Y. C. R. R. Co.*, 35 N. Y. 75; *Richardson* v. *N. Y. C. R. R. Co.*, 45 N. Y. 846; Shearman and Redfield on Negligence, 3d ed., secs. 448, 451.

The second paragraph was unquestionably good. The appellant pleaded in bar of this action the pendency of an action brought by Peter Stout, in his own name, and while in life, against appellant, for the injuries which he had received, and which, as is claimed in this action, resulted in his death. Demurrers were sustained to the paragraphs of the answer setting up the pendency of such action. There was no error in this. The death of Peter Stout abated such action. Sec. 782 of the code, 2 G. & H. 330; *Stout* v. *The I. & St. L. R. R. Co.*, 41 Ind. 149.

VOL. LIII.—10

The jury returned, with their general verdict, answers to interrogatories which were submitted to them. The appellant moved for judgment on such answers, notwithstanding the general verdict, which motion was overruled, and this ruling is assigned for error.

The interrogatories and answers were as follows:

" 1. Did Peter Stout stop his team, before he drove upon the track of the railroad?

"Ans. We think not, from the evidence.

" 2. Could Peter Stout have stopped his team before going upon the track?

"Ans. He could.

" 3. Could Peter Stout have heard the train coming, if he had stopped his wagon and team forty feet before going on to the track?

"Ans. Under the circumstances, we think not.

" 4. Could not Peter Stout have seen the train, or some part of it, if he had raised to his feet in his wagon, southeast of the track of the railroad, at any point north of the Holmes House, before going on the track?

"Ans. At one point it would be very difficult.

" 5. Was Peter Stout negligent in approaching the railroad crossing?

"Ans. We think he used ordinary care.

" 6. Was the bell on the engine rung before it reached the crossing?

"Ans. It was.

" 7. Were the brakes on the cars set before the train reached the crossing?

"Ans. Yes, at or near the crossing.

" 8. Was the engine reversed and the track sanded, before the engine reached the crossing?

"Ans. Yes, just on or near the crossing.

" 9. Were the train men, in charge of the train, guilty of neglect? if so, which of them, and in what act or particular?

"Ans. Yes, the engineer, in not sounding the whistle at a proper distance.

The Indianapolis and St. Louis Railroad Co. *v.* Stout, Administrator.

"10. Could Peter Stout have known that the train was near and coming, if he had stopped his team and looked and listened for the train, before going upon the track?

"Ans. We think he could have known, if he had stopped immediately before going on to the track.

"11. Could not Peter Stout, sitting in his wagon, or standing upon the ground, at a point forty feet southeast of the track, have seen a train two hundred feet west, approaching the crossing?

"Ans. We think not, on account of the obstructions and weather.

"12. If you find that the defendant was guilty of any negligence which produced the injury and caused the death of Peter Stout, what was the negligence?

"Ans. The engineer was negligent for not sounding the whistle, at a proper distance from the crossing.

"G. S. RICH, Foreman."

A special finding overrides the general verdict, only when both cannot stand; and this antagonism must be apparent upon the face of the record, before the court can be successfully called upon to direct judgment in favor of the party against whom a general verdict has been rendered by the jury upon their oath. Buskirk Prac. 216, and authorities cited.

It is the duty of the Supreme Court to indulge every reasonable presumption in favor of the correctness of the general verdict, which is presumed to have been rendered upon the substantial merits of the matters in controversy. It is also the duty of this court to reconcile, if possible, the general verdict with the answers to the interrogatories; for it is settled that if a special verdict can, by any hypothesis, be reconciled with the general verdict, the latter will control, and the court will not render judgment against the party in whose favor the general verdict is rendered. Buskirk Prac. 216, with authorities cited.

The word "inconsistent," as used in section 337 of the code, 2 G. & H. 206, does not mean that the special findings

are inconsistent with each other, nor does it mean that some of the special findings are inconsistent with the general verdict; but it means either that, taken as a whole, the special findings are inconsistent with the general verdict, or that the facts found in one or more of the answers to interrogatories exclude every conclusion that will authorize a recovery for the plaintiff. Buskirk Prac. 216, with authorities cited.

The jury, in answer to the fifth interrogatory, found that the decedent used ordinary prudence; and in answer to the. ninth and twelfth interrogatories, they found that the appellant was guilty of negligence. The other findings are not sufficient to control these. None of them are decisive of the questions of care and prudence on the part of the decedent, and negligence on the part of the appellant. The answers to the first and second interrogatories, to the effect that the decedent could, but did not, stop his team, before crossing the railroad track, are materially modified by the answers to the third and fourth interrogatories, which tend strongly to show that the decedent could neither have seen nor heard the approaching train, if he had stopped his team and looked and listened. In the recent case of the *Cleveland, Columbus & Cincinnati R. R. Co.* v. *Crawford,* 24 Ohio St. 631; S. C., published in 2 Am. Law Times, N. s., p. 211, the following propositions of law, which seem to be fully supported by the numerous authorities cited, are laid down:

"Ordinary prudence requires that a person in the full enjoyment of the faculties of hearing and seeing, before attempting to pass over a known railroad crossing, should use them for the purpose of discovering and avoiding danger from an approaching train; and the omission to do so, without a reasonable excuse therefor, is negligence, and will defeat an action by such person for an injury to which such negligence contributed.

"But the omission to use such precautions, by a person injured, will not defeat his action, if, by due diligence .in

their use, the consequence of the defendant's negligence would not have been avoided.

"Nor will the failure to use such precautions be regarded as negligence on the part of the plaintiff, if, under all the circumstances of the case, a person of ordinary care and prudence would be justified in omitting to use them.

"In an action for damages for alleged negligence, the question of negligence on the part of the defendant, or of contributory negligence on the part of the plaintiff, is a mixed question of law and fact, to be decided by the jury, under proper instructions from the court.

"But, if all the material facts touching the alleged negligence be undisputed, or be found by the jury, and admit of no rational inference but that of negligence, in such case the question of negligence becomes a matter of law merely, and the court should so charge the jury.

"If, however, the testimony be conflicting, the facts uncertain, or the proper inferences to be drawn therefrom doubtful, in such case it would be error for the court to withdraw the case from the jury, or direct them to return a particular verdict."

The answer to the sixth interrogatory finds that the bell was rung, but it does not find that the whistle was sounded.

The answers to the seventh and eight interrogatories find that the brakes on the cars were set, and the engine reversed, and the track sanded, just *on* or *near* the crossing. The performance of these acts just on or near the crossing could not have contributed much to preventing the accident. They should have been performed sooner than they were, to render them effective.

We think the court committed no error in overruling the motion for judgment on the special findings, notwithstanding the general verdict.

The appellant moved the court for a new trial, and assigned therefor various reasons, which will be disposed of in their order.

1. That the verdict of the jury is contrary to the law and

the evidence. The verdict cannot be said to be "contrary to law," within the correct meaning of that phrase. Buskirk Prac. 239. The evidence is very voluminous and quite conflicting, and there is no valid reason why this case should be taken out of the general rule, that,. where there is conflict in the evidence, this court will not usurp the province of the jury.

The second and fourth reasons assigned relate to the interrogatories, and do not constitute valid causes for a new trial, and will not be further noticed.

The third asks a new trial upon the ground that the special findings are not supported by the evidence, but the conflict in the evidence is so great that we cannot, for that reason, grant a new trial. We should only grant a new trial for want of evidence to support a special finding, where the evidence would require us to set aside a general verdict. The same rule should obtain in both cases.

5. That the damages assessed by the jury are excessive. The damages assessed were twenty-five hundred dollars. The damages, under the facts and attending circumstances, cannot be regarded as excessive.

6. The court erred in giving instructions to the jury numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11.

We set out the entire series of instructions given by the court of its own motion, though the giving of the 12th, 13th and 14th is not assigned as a reason for a new trial, and they are as follows:

"1. This is an action brought by Alfred Stout, administrator of Peter Stout, deceased, against the Indianapolis and St. Louis Railroad Company, to recover damages for the death of said Peter Stout, the result of the injuries alleged to have been received by him on account of the negligence of the defendant, as set forth in the complaint.

"2. The defendant answers, first, by a general denial, and secondly, that the injuries complained of were caused by the negligence of the said Peter Stout, and, to entitle the plain-

tiff to recover, the material allegations of the complaint must be established by a preponderance of the evidence.

" 3. The plaintiff in this case cannot recover, unless Peter Stout could have maintained an action for injuries received by the same acts of the defendant, her agents or employes, had he lived.

" 4. This case presents three questions of fact for the consideration of the jury: Was the death of Peter Stout, deceased, caused by injuries received by him on the 7th day of February, 1871, and produced by a locomotive and train of cars of the defendant coming in collision with the horses and wagon driven by deceased, at a public highway crossing, near the city of Indianapolis, as alleged in the complaint? 2d. Were such injuries to said deceased produced by the culpable negligence of the defendant, her employes or servants? 3d. Did the negligence of the said deceased contribute directly to such injuries?

" 5. If the jury find from the evidence that the death of Peter Stout did not result from such injuries as alleged in the complaint, but from other causes, then your verdict should be for the defendant; but if you find that his death was caused by such injuries, then you will inquire whether such injuries were produced by the carelessness or negligence of the defendant, her agents, employes or servants.

" 6. If you find from the evidence that Peter Stout was injured by the negligence of the defendant in constructing the crossing of the highway described, or that he was injured by the carelessness or negligence of the defendant's servants or employes, in the management of the train in question, and that the deceased was guilty of no negligence on his part, which contributed to the injury, and that the injury produced or caused his death, then your verdict should be for the plaintiff.

" 7. The defendant had the right to build her railroad across the highway described in the complaint, but was required to restore the highway to its former state, so as to not have unnecessarily impaired the usefulness of the

152 SUPREME COURT OF INDIANA.

The Indianapolis and St. Louis Railroad Co. *v.* Stout, Administrator.

said highway; and if you find from the evidence that the defendant in this case constructed a crossing at the place described in the complaint, and that such crossing was, taking into consideration the location and nature of the ground, and the surroundings of the place, constructed in such a manner as to render it easy to approach and cross by travellers and teams on the highway, without danger to persons using reasonable and ordinary care, then the defendant did all that was required of her in making such crossing. If you find that the view of approaching trains was obstructed by means of an embankment, and the defendant further obstructed the view by throwing earth on top thereof, this would charge the defendant with a greater degree of care in running her trains at that point to avoid danger to travellers on the highway, and is a matter to be considered by you in determining the question of negligence.

" 8. A traveller, in approaching a railroad crossing on the public highway, is bound to exercise ordinary care and vigilance, in proportion to the danger to be avoided. His vigilance would be quickened by the fact that he could, not see the track sideways until he got on or near the track, and if the decedent could not see an approaching train by reason of any obstruction to the view, then he was called to greater care and watchfulness in driving upon the track than if the view had been open; and if he heard, or in the exercise of ordinary care and watchfulness might have heard the noise of the coming train, and then driven upon the track without first fully ascertaining that there was no danger from collision, he was guilty of negligence, and you will find for the defendant.

" 9. If you find from the evidence in this case that the decedent was guilty of any negligence on his part, which contributed to the injuries complained of, your verdict should be for the defendant, although you should find that the defendant was also guilty of negligence in the premises.

" 10. One approaching, in a wagon, on the highway, the crossing of a railroad, over which trains moving at a high

rate of speed are frequently passing, may reasonably be required to assure himself, if he can, by the use of his organs of sight and hearing, that no cars are in dangerous proximity. If the use of such means would give the information, he may properly be charged with such knowledge. If necessary to make such observations, he will be required to reduce the rate of speed at which he is moving, or even to stop his conveyance. On the other hand, the company were required to keep a reasonable lookout at public crossings, and to give such signals of the approach of trains as are calculated to notify the public, when, without such signals and in the exercise of the proper care and caution by the company, their proximity would not otherwise be known. Thus, if the track were concealed from view, and the sound of the train, from high wind or any other cause, was destroyed, it would devolve upon the company to use any other usual and proper method to give notice to persons travelling upon the highway.

"11. If you find from the evidence that Peter Stout, the deceased, did not, before attempting to cross the railroad, endeavor to ascertain whether a train was near, by looking up and down the track, or by using all reasonable means to ascertain whether it would be safe to cross the track, and he went upon the track without investigating beforehand, then he was guilty of negligence, and the plaintiff in this suit could not recover.

"12. If you find from the evidence in this case that the deceased, Peter Stout, used ordinary care and prudence to avoid accident in approaching the crossing, that is to say, such care and caution as an ordinarily prudent man under like circumstances would have used, and when he became aware of his danger, that he used such care as men of ordinary prudence, under like circumstances, would be expected to use to avoid or escape injury, then his negligence did not contribute to the injury.

"13. It is the province of the jury to judge of the credibility of the witnesses and the weight you will give to their

testimony ; and in determining this, it is proper for you to consider the interest, if any, they may have in the result of the suit, the opportunity they may have had of acquiring knowledge of the facts about which they testify, and their bias or prejudice, if any they have.

" 14. If you find for the plaintiff, it will be your duty to determine the amount which in your judgment the plaintiff should receive.    This will be such a sum as you deem a fair and just compensation, taking into consideration the circumstances surrounding the deceased, his family relations, etc., the amount to be determined by the exercise of a sound discretion, but in no event can it exceed the sum of five thousand dollars."

The first, second and third relate to the issues in the cause, and seem to be entirely fair and unexceptionable.

The first objection urged to the fourth instruction is, that it omits to state anything in reference to contributory negligence on the part of the decedent; but this objection is not sustained by the record.

The third question relates to contributory negligence on the part of the decedent.    Besides, this question is fully covered by the sixth and ninth instructions, which are as favorable to the appellant as it had any right to ask or expect.

It is also objected to the fourth instruction, that it assumes the death of Peter Stout.    There is nothing in this objection.    The answer admits the character in which the plaintiff sues, and this admits the death of the said Peter Stout; and hence, the court, in its instructions, had the right to assume that he was dead.

No objections are pointed out to the fifth, sixth, eighth and ninth; and the tenth and eleventh are conceded to be good.    Objections are urged to the twelfth, thirteenth and fourteenth, but, as these instructions are not named in the motion for a new trial, no question is presented in reference to their correctness.

It is claimed that the court should have added to the first

branch of the seventh instruction, that the plaintiff could not recover, on account of the construction of the crossing over the highway, no matter how defective it might be, if the injury to the decedent was not caused by such defective crossing. We think the appellant should be satisfied with that portion of the seventh instruction, as the jury were, in effect, informed thereby, that the plaintiff had no right to recover for and on account of the defective construction of the crossing over the highway.

We think the court committed no error in giving the instructions complained of.

7. The court erred in refusing to give instructions to the jury, asked at the proper time by the defendant, and designated by numbers from 1 to 24 inclusive, each number being given.

The first instruction asked is fully covered by the fourth instruction given by the court.

The second, third, fourth, sixth and seventh instructions refused are substantially embraced by the seventh, eighth, ninth and tenth instructions given. The fifth is not in the record.

The eighth instruction asked by defendant was rightfully refused; for it is not reasonable to require a man to be cool and collected and to act with perfect prudence and in the exercise of a deliberate judgment in the face of an unexpected and deadly danger. A man is not bound to decide at his peril as to the most prudent course. In *Buel* v. *The N. Y. C. R. R. Co.*, 31 N. Y. 314, a person was injured by jumping off a train to avoid danger, whilst others who sat still were not injured, yet he was allowed to recover damages from the company.

The same rule was allowed in the Exchequer Court before Chief Baron POLLOCK. *Greenland* v. *Chaplin*, 5 Exch. 243.

Failure on the part of Stout to take *unusual* care is no defense to the action. So it has been repeatedly adjudged in cases involving the risk of life and limb. See Shearman

and Redfield on Negligence, 3d ed., sec. 29, p. 35, and authorities cited in note 1.

In the *I., B. & W. Railway Co.* v. *Carr*, 35 Ind. 510, it was said: "We think this instruction was correctly refused. It asserts that if the deceased might have seen the train by looking up, it was his duty to do so; and if he failed to look up, he was guilty of negligence, and the action could not be sustained. The evidence shows that the deceased did look up, but we think it most probable that when he did so, the train was so close upon him that, in the confusion of the moment, he stepped in the wrong direction, and thereby lost his life. He is not to be charged with negligence because he did not when suddenly startled by the cry of danger, or by the near approach of the train, do exactly what one not exposed to such peril might think he might or ought to have done."

The ninth and tenth were properly refused, as they were embraced by the thirteenth instruction given by the court.

The eleventh and twelfth are covered by the fifth instruction given by the court.

The thirteenth instruction was properly refused, because the court correctly instructed the jury in reference to the credibility of the witnesses and the weight which should be given their evidence in the thirteenth instruction given by the court of its own motion.

The fourteenth, fifteenth and sixteenth relate to the construction of a railroad track over a highway. The seventh instruction given by the court properly expressed the law on that subject.

The seventeenth instruction asked related to the measure of damages, and did not properly express the law, while the fourteenth instruction given did properly lay down the correct rule for determining the damages.

*City of Chicago* v. *Major*, 18 Ill. 349; *Chicago & Rock Island R. R. Co.* v. *Morris*, 26 Ill. 400; *Pennsylvania R. R. Co.* v. *McCloskey's Adm'r*, 23 Pa. St. 526; *Oldfield* v.

The Indianapolis and St. Louis Railroad Co. *v.* Stout, Administrator.

*New York & Harlem R. R. Co.*, 3 E. D. Smith, 103; *Railroad Company* v. *Barron*, 5 Wal. 90.

The eighteenth instruction was correctly refused, as the matters embraced therein were covered by the second, sixth and ninth instructions given.

The nineteenth was fully covered by the fifth given.

While the twentieth instruction correctly expressed the law, the appellant was not injured by its refusal, as the seventh, eighth and tenth instructions given substantially covered the same ground.

The twenty-first is not in the record.

The twenty-second instruction related to a statement, alleged to have been made by one of the counsel for appellee, in reference to the conduct of a witness, whose deposition was offered in evidence, but as the deposition was rejected, and as the witness did not testify in person, we are unable to see how the statement complained of prejudiced the appellant.

The twenty-third instruction asked related to the question of contributory negligence, and, as has been seen, the court fully and correctly instructed the jury in reference thereto.

The twenty-fourth related to the credibility of a particular witness and the weight which should be given his evidence, but was properly refused, as the court had given a general instruction on that subject.

The eighth reason for a new trial was, that the court had erred in sustaining a demurrer to the second paragraph of the answer. This was no cause for a new trial.

The ninth, tenth and eleventh causes for a new trial are based upon the action of the court in overruling motions to suppress parts of the depositions of Drs. Wall and Todd, and in permitting such parts to be read to the jury. The answer to the fourth interrogatory in Dr. Todd's deposition was improper, and was struck out. We think the residue of the questions and answers were proper, and the court committed no error in reference thereto.

The twelfth cause presents the question whether the court erred in refusing to suppress the deposition of Charles Smith, and in permitting the same to be read in evidence. The point relied upon is this: Peter Stout lived for some time after he was injured by the railroad collision. He brought an action against the appellant to recover damages for such injury. Upon the trial of the cause, he and two other witnesses, who were dead at the time of the trial of the present action, were examined and testified as witnesses. The deposition of Charles Smith was taken for the purpose of proving what was the evidence of such witnesses upon the former trial. It is claimed that such evidence was incompetent upon the grounds:

1. That the causes of action were not the same.

2. That the parties are not the same.

The action of Peter Stout was based upon the common law liability of the appellant, while the present action is based upon a statute; but the foundation of the action in each case was the injury caused by the negligence of the appellant. The death of Peter Stout, after verdict and before judgment, caused the action to abate. *Stout* v. *I. & St. L. R. R. Co.*, 41 Ind. 149. Upon his death, his administrator brought the present action. We think the causes of action were the same. The parties are not the same, but Greenleaf, in section 164, p. 190, 1 Greenl. Ev., says:

"The admissibility of this evidence seems to turn rather on the right to cross-examine, than on the precise nominal identity of all the parties. Therefore, where the witness testified in a suit, in which A. and several others were plaintiffs, against B. alone, his testimony was held admissible, after his death, in a subsequent suit, relating to the same matter, brought by B. against A. alone. And though the two trials were not between the parties, yet if the second trial is between those who represent the parties to the first, by privity in blood, in law, or in estate, the evidence is admissible."

Our statute makes the administrator the representative of

the deceased. Sections 782 and 784, 2 G. & H. 330. We think it was clearly competent to prove what the evidence of these witnesses was upon the former trial.

The thirteenth and fourteenth causes call in question the correctness of the action of the court in excluding the deposition of Sylvester Clements. When the deposition was taken, the witness resided in the State of Illinois. When it was offered in evidence, the appellee was permitted to prove that such witness was then residing in the county of Marion, and State of Indiana. The county of Marion, where the witness resided at the time of the trial, and the county of Hendricks, where the trial was had, adjoin each other, and no other county intervenes between them. In such case, the deposition of a witness can be taken, where such witness was not able to attend. Section 250 of the code, 2 G. & H. 175. It is provided by sec. 259, 2 G. & H. 177, that "when a deposition is offered to be read in evidence, it must appear to the satisfaction of the court that the cause for taking and reading it still exists." See *Haun* v. *Wilson*, 28 Ind. 296; *O'Conner* v. *O'Conner*, 27 Ind. 69; *Shirts* v. *Irons*, 37 Ind. 98. We think the deposition was properly excluded.

The fifteenth cause for a new trial relates to the alleged misconduct of one of the attorneys for appellee. We have already stated, in speaking of the refusal of the court to give the twenty-second instruction asked, that the appellant was not injured by such alleged misconduct.

The sixteenth and last cause for a new trial is based upon the refusal of the court to require the jury to make their answers to certain interrogatories more certain and specific. We are of opinion that there was no error in refusing the request of the appellant. The answer to the fourth interrogatory is given in a negative and vague manner, but it manifestly appears therefrom that the jury intended to find that the decedent might have seen the approaching train at all points but one, between the Holmes House and a point southeast of the track. Besides, such answer is modified and controlled by the answer to the fifth interrogatory. We

think the appellant was not injured by such refusal.    If the answer to the fourth interrogatory had been full, certain and specific, it would not have controlled the general verdict. *McElfresh* v. *Guard*, 32 Ind. 408.    Hence, there was no error.

We have thus examined all the alleged errors, and have not found any that justifies the reversal of the judgment.

The judgment is affirmed, with costs.