West v. Cavins, Executor.

No. 7489.

## WEST v. CAVINS, EXECUTOR.

DECEDENTS' ESTATES.—*Supreme Court.—Appeal.—Motion to Dismiss.— Waiver.*—A motion to dismiss an appeal under sections 189 and 190, 2 R. S. 1876, p. 557, because no bond was filed as required, comes too late when made two years after the case had been submitted by agreement, and briefs upon the merits filed by each party, and must be considered as waived.

PRACTICE.— *General Verdict.—Answers to Interrogatories.*—A motion for judgment on the facts found, notwithstanding the general verdict, is properly overruled, where the answers are not inconsistent with the general verdict, or where the facts found are immaterial without a further finding, or do not appear in the pleadings.

SAME.—*Venire de Novo.*—A venire de novo is not the proper method to raise the question of the sufficiency of an answer to an interrogatory; but the party should object to receiving the verdict until the question has been properly answered, and, if his objection be overruled, should save his exception to that ruling.

EVIDENCE.—*Former Trial.*—In a second action and trial, it is not competent for a witness to testify in a general way on what theory the suit was first prosecuted, and upon what intimations of the court the case was dismissed.

SAME.—*Admissions of Attorney.—Query.*—Can an attorney, in the absence of his client, make an admission of fact which would be binding on the client except for the purposes of the pending case?

SAME.—In an action against a decedent's estate, on a note given by the testator in his lifetime, testimony as to the fact and time of his sending a sum of money to the payee is competent and relevant, it being proper to be considered in determining whether the note was given as compensation for services and acts of kindness to the deceased.

PROMISSORY NOTE.—*Consideration.—Gifts inter Vivos and Causa Mortis.— Testamentary Disposition.*—The desire of a testator to rectify an inequality in the provisions of his will is not a sufficient consideration to support a note given for that purpose only. *Mallett* v. *Page*, 8 Ind. 364, criticised and explained.

SAME.—*Executed and Executory Contracts.*—While natural love and affection is a good consideration for a deed or any executed contract as between the parties thereto, it is not so for an executory contract.

From the Greene Circuit Court.

*W. J. Baker, L. Shaw, E. E. Rose* and *E. Short*, for appellant.

*W. M. Franklin, A. G. Cavins* and *E. H. C. Cavins*, for appellee.

Woods, J.—The first question to be decided in this case arises upon a motion to dismiss the appeal. The appellant filed a claim against the estate of Edward West, of whose last will the appellee was executor. In *Seward* v. *Clark*, 67 Ind. 289, overruling *Hamlyn* v. *Nesbit*, 37 Ind. 284, this court held that the right of appeal from any decision or judgment, upon a matter connected with a decedent's estate, is given and regulated wholly by the provisions of the act concerning the settlement of decedents' estates. Sections 189 and 190 of that act, as they must now be read—see *Seward* v. *Clark*, *supra*—provide that any person considering himself aggrieved by any decision growing out of a matter connected with a decedent's estate may appeal to the Supreme Court upon filing with the clerk of the court below a bond with penalty in double the sum in controversy, in cases where an amount in money is involved, and in other cases in a reasonable sum to be designated by the clerk, with sufficient surety, payable to the opposite party in such appeal, conditioned for the diligent prosecution of the appeal, and the payment of all costs, if costs be adjudged against the appellant, which bond shall be filed within thirty days after the decision complained of is made, unless for good cause shown this court shall direct the appeal to be granted on filing the bond within one year after the making of the decision. *Bell* v. *Mousset*, 71 Ind. 347.

The judgment appealed from was rendered April 5th, 1878, and the transcript filed with the clerk of this court November 26th, 1878, but no appeal bond was filed as required, and for this cause we are moved to dismiss the appeal. The appellant claims that the motion came too late, and that the right thereto has been waived. The case on appeal was submitted by agreement on February 5th, 1879, and briefs upon the merits filed by each party. The motion to dismiss was not made or filed until February 7th, 1881.

We think the appeal ought not now to be dismissed. Had

the motion been made before or at the time of submission, the appellant could have applied to this court for leave to file the bond within a year from the judgment. The bond is required for the benefit of the appellee, must be "payable to the opposite party in such appeal," and we see no reason for holding that the right thereto may not be waived. An agreement to submit made within the year allowed for the appeal and a postponement of the motion to dismiss beyond that time, in good conscience, should be held to constitute such waiver. See *The State* v. *Walters*, 64 Ind. 226.

This brings us to the merits of the errors assigned, which are that the court erred in overruling the respective motions of the appellant, for a new trial, for a *venire de novo*, and for judgment in her favor upon the special findings of the jury, notwithstanding the general verdict.

Supporting it by the usual affidavit, the plaintiff filed the following note as the basis of her claim : "East Montpelier, Vt., Aug. 24, 1874. For value received I promise to pay Nancy A. West or order the sum of seven thousand dollars (7000) at my decease without interest. Edward West."

The defences filed were, first, no consideration, and, second, that said Edward West wrote his name on a blank piece of paper and delivered it to the plaintiff, who afterwards, without the knowledge or consent of said Edward, wrote the note sued on, over said signature, with the intent to defraud the said Edward, his heirs, legatees and assigns. Reply in general denial.

Upon a second trial the jury returned a general verdict for the defendant and answers to interrogatories as follows :

"1. At the date of the note sued on was the deceased indebted to the plaintiff for anything? If so, for what and how much? Answer. No.

"2. At the date of the note had the plaintiff rendered any service for the deceased for which there was an agreement.

and intention by both parties, that the deceased should pay? If so, what were such services? Answer. Was not.

"3. If the note was given, was it done for the purpose of equalizing Jeremiah's family under the will with the deceased's other brothers? Answer. It was.

"4. If the note was given, was it intended as a gift to the plaintiff? Answer. It was."

There is nothing in these answers necessarily inconsistent with the general verdict. The first and second interrogatories do not in terms relate to the note in any respect except the date, and any indebtedness of the deceased to the plaintiff, if found to have existed, would have been immaterial, in the absence of a further finding that the note was given therefor. The third answer is without significance because it is not found, and does not appear in the pleadings, who Jeremiah was, nor that the plaintiff was connected with his family; and if it were conceded that natural love and affection between those near akin would support a promise, based on no other consideration, the fourth question and answer can not avail the appellant, because it is not found nor admitted that she bore any such relation to the deceased. The motion for judgment for the appellant on the facts found, notwithstanding the general verdict, was therefore properly overruled.

Neither was there any error in overruling the motion for a *venire de novo.* From what has already been said it is evident that if the third answer had been specific and clear, and favorable to the appellant, it could not have affected the validity of the general verdict. The defective answer, therefore, does the appellant no harm. *Campbell* v. *Frankem*, 65 Ind. 591. But, if the answer could have been material, a motion for a *venire de novo* was not the proper means to raise the question of its sufficiency. The appellant should have obje ted to the receiving of the verdict until the question had been properly answered, and, if his objection had

been overruled, should have saved his exception to that rul-
ing. Buskirk's Practice, 219 ; *McElfresh* v. *Guard*, 32 Ind.
408. The answers to the third and fourth interrogatories do
not involve any such inconsistency but that they may stand
together. The note may at the same time have been a gift,
and given "for the purpose of equalizing Jeremiah's family,"
etc. If, therefore, inconsistency between answers to inter-
rogatories could be cause for a *venire de novo*, where there
is a general verdict covering all the issues, that cause does
not exist in this case.

Among the causes assigned for a new trial is error of law
in the admission, over objection, of the following testimony :
"At the June term, 1877, of this court, there was a trial of
an action on this note between the same parties. The case
was * * tried by the plaintiff upon the theory that there
was no consideration for the note but the desire of the testator
to equalize the family of his brother Jeremiah with his other
brothers, in his will. This was claimed by the plaintiff's
attorney on the presentation of the case to the court for
trial, and stated on the argument to be the consideration.
The plaintiff herself was then in Bloomfield, but was not
present. After argument on the legal question as to whether
that was a sufficient consideration, the court intimated an
opinion that it was not, and the suit was then dismissed by
the plaintiff before the finding was announced."

Objection to the admission of this testimony was made on
the grounds that it was hearsay, not shown to have been
authorized by the plaintiff, and not competent, proper or
material evidence ; that it was not proper to admit evidence
of admissions of facts made by counsel in the absence of the
party, nor to prove that a former suit on the same note was
dismissed, nor at what stage and under what circumstances
it was dismissed.

The evidence in the case tends strongly to show, and per-
haps the great preponderance of it, including admissions

shown by several witnesses to have been made by the plaintiff, does show, that the note was made solely for the purpose of equalizing the family of Jeremiah with the other brothers of the deceased, but there was evidence that, at and before the time the note bears date, the plaintiff had rendered personal services to the deceased during visits of a few days or weeks at her house; that the note was made during the last of these visits, no one being present or having a knowledge of the transaction except the plaintiff and the deceased. One witness testified that some time in 1874 the deceased told him that he had given the plaintiff a note for $7,000, due after his death; that she and her daughter had been good and kind to him, and waited on him when he was sick, and "I understood him to say he gave her the note for it." The testimony of this witness, as well as that of other witnesses tending in the same direction, was in some measure, perhaps strongly, impeached and discredited; but it became a question for the jury, and by pertinent instructions of the court it was left to the jury, to determine whether the services referred to constituted the consideration of the note or any part thereof. Under the plea of no consideration, proof of any consideration, however small in value, was enough to support the contract; and the plaintiff, not being herself a competent witness, and being, therefore, unable to explain or deny the admissions claimed to have been made by her, had a right that every circumstance proven in her favor should go to the jury undiminished in force by the admission of any incompetent evidence to the contrary. Had she been a competent witness and voluntarily had permitted the testimony concerning her alleged admissions to go unchallenged and unexplained, we might perhaps say that it was clear that the testimony complained of was of no importance, or too insignificant to have affected the conclusion of the jury. Yet we should greatly hesitate before so deciding. As a general rule, to which there can hardly be an exception, if there is

such evidence in support of a proposition as to require its submission to the jury at all, and incompetent but pertinent testimony on the subject is admitted, this court can not, upon a consideration of the weight of the evidence pro and con, say that the error was harmless.

That the testimony under consideration was incompetent, but calculated greatly to influence the mind of the jury, we have no doubt. If the plaintiff herself had been a witness, she might doubtless, on cross-examination, have been asked in reference to the theory on which she prosecuted the first action, and what consideration she claimed for the note at that time; but, even if it were permissible to prove admissions made by counsel on such trial, it was not competent for a witness to state in a general way, as was done in this case, on what theory the suit was prosecuted, and upon what intimations of the court the case was dismissed. This is no proof of what the attorney said or admitted. Whether an attorney, in the absence of the client, could make an admission of fact which would be binding on the client, except for the purposes of the pending case, we are not required to decide; but see the following authorities cited by counsel pro and con: 1 Greenleaf Evidence, sec. 186; 1 Phil. Evidence, side p. 524; *Langley* v. *Earl of Oxford*, 1 M. & W. 508; *Frye* v. *Gragg*, 35 Me. 29; *Colledge* v. *Horn*, 3 Bing. 119; *Moffit* v. *Witherspoon*, 10 Ired. (N. C.) 185; *The Trustees, etc.*, v. *Bledsoe*, 5 Ind. 133; *Wheat* v. *Ragsdale*, 27 Ind. 191; *Hays* v. *Hynds*, 28 Ind. 531; *Booher* v. *Goldsborough*, 44 Ind. 490; *Cook* v. *Barr*, 44 N. Y. 156; Code, sec. 324; 2 Wait's Law & Prac., p. 374.

There was no error in admitting the testimony of the witness West concerning the fact of sending, and the time when the testator sent, $100 to the plaintiff. It tended, in some measure, legitimately to discredit the testimony of the witness Patterson concerning his alleged conversation with the testator on the subject of the desire of the testator to

send that sum to her. It may be, as suggested, that the con-- versation with Patterson occurred, and had reference to the sending of an equal sum, at a subsequent time, but that was a question for the jury to decide, in the light of all competent evidence. The testimony of West was competent, and relevant not only to the subject and for the purpose indicated, but for another purpose. If the deceased had, in the fall of 1873, as the witness testified, sent to the plaintiff, or to her husband, the sum of one hundred dollars, it was a fact proper to be considered in determining whether the note sued on was given to compensate her for her acts of service and kindness to the deceased. The testimony on this point being largely circumstantial, the sending of this sum of money at that time as a gift was, to say the least, pertinent and of some significance.

The more important question presented for decision is discussed by counsel, in reference to instructions given and refused. An instruction was given, to the effect that the desire of the testator to rectify an inequality in the provisions of his will was not a sufficient consideration to support the note if given for that purpose only; and the court refused to give an instruction requested by the appellant, to the effect that if the note was given to rectify an inequality in a will then existing, and afterward the testator executed another will in which he left a similar discrepancy in the legacies to his brothers, the plaintiff (who was the wife of the brother Jeremiah) still holding the note, the note is a valid note and supported by a sufficient consideration.

The only authority cited in support of the instruction asked, and refused by the court, is the case of *Mallett* v. *Page*, 8 Ind. 364. In that case, for the purpose of disposing of his property and for no other consideration, a father procured his son to execute to his minor daughter two notes for three thousand dollars, and, to secure the payment of the same, to execute a mortgage on certain land of the father,

which he proposed or intended thereafter to convey to the son. The notes and mortgage were delivered to the daughter; and, the mortgage having been duly recorded, the father took charge of the papers; but, afterward changing his mind, probably on account of his displeasure at his daughter's marriage, he destroyed the notes and mortgage, and did not convey the land to the son. The action was by the daughter and husband against the father and son. This court held that the father was estopped by the recitals in the mortgage, made as it was by the son under his direction, from contesting the title of the mortgaged premises, that natural love and affection was a good consideration for the notes and mortgage, and that the father could not show any contemporaneous verbal understanding between him and his son inconsistent with the face of the mortgage, *Jacobs* v. *Finkel*, 7 Blackf. 432, being cited in support of the latter proposition. The case cited supports the general proposition, that a party to a written agreement can not set up against it a contemporaneous verbal understanding of the parties, but, as we conceive, was not in point for the purpose for which it was cited. The father was not a party to the mortgage, and there was therefore no estoppel by deed against him. There was no estoppel *in pais*, because the facts were equally well known to all the parties. If the father had made a binding contract with the son to convey the land, and in consideration of that contract the son had executed the note and mortgage, the transaction would have been entirely valid and binding on all the parties, and the conclusion of the court on the whole case clearly right; but, on the facts as stated in the opinion, there was no consideration to uphold the notes and mortgage against the son who made them, except his father's promise to convey to him the land embraced in the mortgage; but this promise, if the case shows a promise, was in parol only, was not accompanied with a delivery of possession of the land, and by reason of

the statute of frauds was incapable of being enforced. The mortgage was only an incident of the notes, and constituted no estoppel against the making of proof that the notes were given without consideration, or upon a consideration which had failed ; and, once the notes went down for want of consideration, the mortgage should have gone with them. There can be no pretence that the love and affection of the brother for his sister was the consideration on which he made the notes and mortgage ; and it must be equally clear that the father's love for the daughter could not serve to bind the son to a promise, which he made on the strength of the father's promise to convey to him a tract of land. We think the entire reasoning of this case was misconceived and erroneous.

While natural love and affection is a good consideration for a deed, or for any executed contract, as between the parties thereto, it is not so for an executory contract; and so where a father gave one of his sons a note for a thousand dollars, remarking that he had met with losses and was not as wealthy as his brother, it was held that an action could not be maintained on the note against his father's executor. *Fink* v. *Cox*, 18 Johns. 145. It was there said, that, ''In such a case, the consideration must be a valuable one, for the benefit of the promisor, or to the trouble, loss, or prejudice of the promisee. The note here manifested a mere intention to give the one thousand dollars. It was executory, and the promisor had a *locus pœnitentiæ.* It was an engagement to give, and not a gift.'' This doctrine is elementary. Edwards Bills, etc., 324 ; Chitty Bills, side p. 74–76, and notes ; 1 Parsons Notes & Bills, 178–9 ; *Byles* Bills, side p. 123 ; 2 Kent Com. 439 ; Story Bills of Exchange, 189, sec. 181 ; *Hamo* v. *Moore's Adm'rs,* 8 Ohio St. 239 ; *Starr* v. *Starr,* 9 Ohio St. 74 ; *Copp* v. *Sawyer,* 6 N. H. 386 ; 1 Daniel Neg. Instru. 24 ; Bigelow Bills & Notes, 88.

These authorities show that such notes can not be upheld,

either as gifts *inter vivos* or *causa mortis*, and it need hardly be stated that they can not be valid as testamentary dispositions.

The judgment is reversed, with costs, and cause remanded, with instructions to grant a new trial.