The Chicago and Eastern Illinois R. R. Co. *v.* Hedges, Administratrix.

No. 11,141.

## The Chicago and Eastern Illinois Railroad Company *v.* Hedges, Administratrix.

RAILROAD.—*Action for Damages.*— *Wilful Killing.*—*Sufficiency of Complaint.*— A complaint against a railroad company, to be good as charging wilfulness in the killing by a train of cars of a person for whose death damages are sought to be recovered, must show that the deceased was purposely or wilfully killed, or that the train was purposely or wilfully run upon him. It is not sufficient to charge that the acts in the management of the train, resulting in the death, were purposely and wilfully done.

SAME.—*Trespasser.*—A railroad company is not liable for the killing of a person unlawfully upon its track unless the killing be wilful.

SAME.— *Use of Track as Part of Highway.*—Where a part of a railroad track, not within the limits of a street, is habitually used by the public in approaching the railroad depot, with the knowledge and consent of the company, a person so using it is not a trespasser.

SAME.—*Negligence.—Liability of Company.—Instruction.*—An instruction that although the person injured was unlawfully upon the railroad track, " the company will be responsible if its employees are guilty of gross or reckless negligence, and could have avoided the accident by the exercise of reasonable and ordinary care and watchfulness," is erroneous under any issue.

SAME.—*Pleading.*—In pleading, the words "gross negligence" and "recklessness" can not be substituted for wilfulness.

SAME.—*Evidence.—Practice.*—Evidence of wilful conduct is only available under a pleading charging wilfulness.

SAME.—*Care Required in Crossing Track.*—A person about to cross a railroad track must, to be free from negligence, take such precautions as could reasonably be expected from an ordinarily prudent person under like circumstances; but the fact that he does not, at the instant of stepping upon the track, look to ascertain if a train is approaching, is not conclusive of want of due care on his part.

SAME.—*Contributory Negligence. — Deceptive Appearances.*—Negligence can not be imputed to one who is deceived by appearances calculated to deceive an ordinarily prudent man.

SAME.— *When Question for Jury.*—When there is evidence tending to show that the plaintiff was thrown off his guard by conduct on the part of the defendant which might have such effect upon an ordinarily prudent man, it is proper to submit the question of contributory negligence to the jury.

INSTRUCTIONS TO JURY.—*Signing.—Practice.*—There is no available error

in refusing to give instructions asked by a party, where they are not signed as required by section 533, R. S. 1881.

INTERROGATORIES TO JURY.—*Motion for More Definite Answers.*—*Harmless Error.*—It is a harmless error for the trial court to refuse to require the jury to answer more definitely certain interrogatories submitted to them, when it appears that no answers which they could make would change the result.

From the Fountain Circuit Court.

*T. F. Davidson, C. E. Booe* and *W. Armstrong,* for appellant.

*R. B. Jones, C. D. Jones, R. C. Gregory* and *W. B. Gregory,* for appellee.

BLACK, C.—The appellee, administratrix of the estate of Daniel T. Hedges, deceased, brought her action against the appellant to recover damages for the killing of said Daniel by his being run against and over by a train of cars owned and operated by the appellant upon the track of the Indiana, Bloomington and Western Railway Company, in the town of Covington, on the 28th of March, 1883.

The complaint was in three paragraphs, all charging that the death was caused by the defendant's negligence, without negligence on the part of the intestate.

There has been some discussion as to whether the third paragraph charged a wilful killing, concerning which we will speak presently.

The answer was a general denial. A jury returned a verdict for the plaintiff for $1,200, and answered interrogatories. The defendant objected to the receiving of the verdict and the discharge of the jury, and moved to require the jury to fully answer certain of the interrogatories, and to make their answers thereto definite and responsive. The court received the verdict and discharged the jury.

The defendant moved unsuccessfully for a *venire de novo,* for judgment on the answers to interrogatories notwithstanding the general verdict, and for a new trial, and judgment was rendered on the verdict.

It will aid in the decision of the case to state the following facts: The defendant owned and operated a railroad which connected with the track of the Indiana, Bloomington and Western Railway Company, a short distance east of the depot of the latter company, at Covington, and, by an arrangement between said companies, used the track of said latter company between said place of intersection and Danville, Illinois. Main street, in Covington, crossed the tracks of said latter company, being one main track, lying east and west, and parallel therewith, two side tracks or switches. The defendant was moving a train of cars toward the west on said main track. At some distance east of said crossing, the engine was detached from the moving train and was run with quickened speed across said street to a water tank two hundred and forty feet west of said crossing, the train being left to follow, on a down grade, in charge of a brakeman. The plaintiff's intestate, a man seventy-three years old, having approached on said street, was struck, run over and killed by the train.

The jury found, in answer to interrogatories, that the deceased was approaching the railroad crossing from the north; that he was walking; that he was familiar with the locality of the crossing; that he had known of the existence of the railroad at that place for ten or more years; that he had been in the habit of going to the depot and crossing the railroad tracks frequently; that his business had taken him to the depot, at or about the same hour as that at which he was killed, on each week day for two or three months before he was killed; that he was on his way to the depot at the time he was killed; that the street on which he was walking ran nearly north and south, and crossed the railroad nearly at right angles; that the train was approaching the crossing from the east; that there were two side-tracks at the crossing, both lying north of the main track, one of them "near twenty feet" and the other "near eight feet" from the main track; that from a point forty feet north of the main track,

the deceased could have seen " near one hundred and forty feet " up the main track in the direction of the approaching train; that had he looked when he reached the north side-track, he could have seen " near one hundred and sixty feet " east along the main track; that when he reached the south side-track, he could have seen " near two hundred and sixty feet " east along the main track; that the accident happened in the daytime; that the depot was west of the crossing and south of the main track; that the depot platform approached within five and one-half feet of the west side of the street and sidewalk crossing.

The twenty-third interrogatory was as follows: " Did the train conductor stand on the depot platform and shout a warning to the deceased?" The jury answered: "He hollowed." And they answered that this was not done before the deceased had crossed the south side-track, and that it was done before he had stepped on the main track.

To the question, " Was the conductor's warning in tone loud enough to be heard at the Craig House, one hundred yards away?" they answered, " We do not know."

They answered further, that there was a brakeman " at the brakes between the second and third cars, they being together;" that he did not shout a warning to the deceased while the latter was on the south side-track.

The thirtieth interrogatory was: "Did this brakeman shout a warning to the deceased before deceased reached the main track?" The jury answered, " He shouted."

They also found that the train was approaching the crossing at the rate of speed of about four miles per hour; that there were eleven cars in the train, all loaded; that for one-half a mile the main track approached the road crossing from the east on a descending grade of twenty-five to thirty feet to the mile; that the deceased, if he had looked in the direction of the approaching train, could have seen it in time to stop before stepping on the track in front of it; and that the

train could not have been stopped after the deceased stepped on the main track and before it struck him.

The eighteenth, nineteenth and twenty-second questions and the answers thereto were as follows:

" 18. Was the deceased struck within the limits of the street and sidewalk? We, the jury, are not agreed.

" 19. Was the deceased struck west of the crossing and outside of the limits of the street and sidewalk? The jury are unable to agree.

" 22. How far west of the east end of the platform was deceased when the train struck him? ˙ Jury are disagreed."

The allegations of the third paragraph, to which we need to direct attention, were as follows:

" Said defendant, by her said servants, did then and there carelessly, negligently, purposely, wilfully and recklessly detach said locomotive engine from said train of cars, they being then in motion, and run and drive said engine, detached as aforesaid, with quickened speed to the water tank, located about fifty yards west of said depot, near said last named road's track, negligently, purposely, wilfully and recklessly leaving said train to follow, there being a descending grade from thence to said depot, down which said engine and train of cars were then moving."

After mentioning certain obstructions to the view of one approaching said crossing from the north, the pleading alleged, " that on said 28th day of March, Daniel T. Hedges, in the pursuit of his lawful and then daily avocation, was walking in a southerly direction on said highway to said depot, located in the southwest angle of said crossing, and as he had reached said crossing and was in the act of passing over said main track, as he then had a lawful right to do, the defendant, by her servants and agents, carelessly, negligently, purposely, wilfully and recklessly caused said train of cars to approach said crossing, and negligently, carelessly, purposely, wilfully and recklessly omitted, by reason of their having detached and driven away the said locomotive engine

as aforesaid, while so approaching said crossing, to give any signal by ringing the bell or sounding the steam whistle, or otherwise, by reason whereof the said Daniel T. Hedges was unaware of their approach; that by reason of said careless, negligent, wilful and reckless management of said train of cars, they were thereby driven and run against and upon said Daniel T. Hedges, and thereby caused his instant death, without any negligence or want of ordinary care on his part."

Notwithstanding the frequent use of the words "purposely" and "wilfully," the pleading does not charge that the defendant purposely or wilfully killed the intestate, or purposely or wilfully ran the train upon him, or purposely or wilfully caused it to be run upon him. The allegations amount to no more than a charge of killing through negligence. *Ohio, etc., R. W. Co.* v. *Selby*, 47 Ind. 471 (17 Am. R. 719; *Cincinnati, etc., R. R. Co.* v. *Eaton*, 53 Ind. 307; *Pennsylvania Co.* v. *Sinclair*, 62 Ind. 301; *Indianapolis, etc., R. R. Co.* v. *McClaren*, 62 Ind. 566.

The record shows that the court refused to give to the jury a number of instructions asked by the appellant. It does not appear that these instructions or any of them were signed as required by the code. R. S. 1881, section 533. Therefore, the appellant can not be heard to complain of the refusal. *Stott* v. *Smith*, 70 Ind. 298, 303.

At the request of the appellee, the court instructed the jury as follows: "You are also instructed that, although a person may be improperly or unlawfully upon a railroad track, that fact alone will not discharge the company or its employees from the observance of reasonable care; and if such a person is run over by the train and killed or injured, the company will be responsible if its employees were guilty of gross or reckless negligence and could have avoided the accident by the exercise of reasonable and ordinary care and watchfulness."

This instruction was clearly erroneous. If a person be unlawfully upon a railroad track, the railroad company, in

moving its trains upon the track, does not owe him any duty except to not purposely or wilfully injure him. If he be wilfully injured, his contributory negligence will not prevent his recovery, but if he, by his own fault, contribute proximately to his own injury, he can not recover for the negligence of the company. Properly speaking, there are no degrees of negligence. · The degree of care devolving on one as a duty depends upon a variety of circumstances, and negligence is a failure to perform such duty; but there can be no responsibility for injury caused by such breach of duty to one whose own fault contributed proximately to his injury. In pleading, the words " gross negligence " and " recklessness" can not be substituted for wilfulness, and if in evidence the conduct intended to be represented by those words can amount to wilfulness, it can not be so made available under a pleading which does not charge wilfulness. And it would be error to instruct a jury that under a pleading charging a wilful injury they might find for the plaintiff by merely finding that the defendant was guilty of negligence, though " gross or reckless negligence," for it would be necessary to find wilfulness.

The railroad company would not be liable for the negligent injury of a person in the situation supposed of the plaintiff in the instruction above quoted, and that instruction would be erroneous under any issue. *Cincinnati, etc., R. R. Co.* v. *Eaton, supra; Evansville, etc., R. R. Co.* v. *Wolf,* 59 Ind. 89 ; *Pennsylvania Co.* v. *Sinclair, supra.*

Some other questions need examination. The court instructed the jury as follows : " It is the duty of one approaching a known railway crossing to look along the line of the railroad track and see if any train is approaching, and if he fails to take this precaution, and goes on the track, this, under ordinary circumstances, would be negligence. If, however, in this case, you shall find from the evidence that the deceased was thrown off his guard and induced to refrain from taking this precaution by seeing the defendant's engine

pass the crossing immediately before he stepped upon the rail-
road track, I will submit to you the question whether or not,
under all the circumstances then surrounding the deceased,
he was guilty of negligence."

One witness testified that after the engine had passed "a
few moments," he heard the train come down. Another wit-
ness testified that it was not more than two minutes after the
engine passed the waiting-room of the depot that the cars
came down. Another testified that he could not tell how long
the interval was; that he reckoned the cars were about four
hundred yards behind when the engine passed the crossing.
This witness testified that he rang the bell of the engine con-
tinuously from a point east of the crossing until the engine
reached the depot, and that the whistle was blown for the
crossing. Another witness, who crossed in advance of the
intestate, testified that he crossed after the passing of the en-
gine, and went into the depot and was inside when he heard
a cry; that he jumped up and ran to a window and saw the
cars run over the old man. The engineer testified that the
engine was at the water tank when the accident occurred, and
that it had been standing there about two minutes before he
was aware of the accident. The fireman testified that the
engine passed the crossing about two minutes before the cars
came up.

There was evidence of obstruction of the view of the in-
testate as he approached the crossing, and that the train of
eleven cars loaded with coal had been running without an
engine something more than half a mile. For one-half a
mile there was a descending grade of from twenty-five to
thirty feet per mile. When the train approached the cross-
ing it was running at the rate of about four miles an hour.
The brake of the forward car was then set, and the brake-
man was then at the brakes of the second and third cars, and
the train when it struck the intestate was not more than two
hundred and forty feet from the engine standing at the water

tank. The train consisted of flat-cars, the highest being about six feet high.

It was not shown that the deceased knew the time of this train, but there was some evidence tending to show that he had not such knowledge.

A person thus about to cross a railroad, to be free from negligence, must take such precaution as could reasonably be expected of an ordinarily prudent person under like circumstances. It is upon this reason that the requirement to look and listen is based. So far as the precaution would be useless, it is not required. Whether reasonable caution was exercised by the intestate in approaching depended upon the nature and extent of his knowledge of facts and his opportunity for knowledge. He was required to act like an ordinarily prudent man. A prudent man's attention may be diverted so that he will fail to look and listen, and the evidence may be such as to make it proper to leave to the jury the question whether it was negligence for him to so fail. There may be circumstances which excuse the taking of the usually necessary precaution of looking and listening. See *Pennsylvania Co.* v. *Rudel,* 100 Ill. 603; *Laverenz* v. *Chicago, etc., R. R. Co.,* 6 Am. & Eng. R. R. C. 274; *Philadelphia, etc., R. R. Co.* v. *Troutman,* 6 Am. & Eng. R. R. C. 117; *Smedis* v. *Brooklyn, etc., R. R. Co.,* 88 N. Y. 13.

In *Indianapolis, etc., R. R. Co.* v. *McLin,* 82 Ind. 435, 452, it was said, that while it is true that the failure of a railroad company to give warning does not relieve a person about to cross the track from exercising care to avoid injury, "yet the absence of such warning is a circumstance to be taken into consideration in determining whether he did exercise the degree of care required or not." See *Pennsylvania R. R. Co.* v. *Ogier,* 35 Pa. St. 60, 71.

It would be a hard rule to impute to the injured person as his negligence a want of vigilance which could be said to have been produced by the defendant's negligence. Negli-

gence can not be imputed to one who is deceived by appearances calculated to deceive an ordinarily prudent man.

The interval of time between the passing of the engine and the coming of the train might, under the evidence, have been found by the jury to have been very short, and considering this fact in connection with the evidence, that the whistle was sounded as the engine approached, that the bell was rung as the engine passed, that the cars, only six feet in height, came on without signal, that the view was obstructed, and that the intestate had no knowledge of the time of the train, the jury might conclude that the attention of the intestate was diverted, so that without negligence on his part he, for this reason, did not see the train in time to escape; that his conduct was influenced by the defendant's negligent acts, and he was thus thrown off his guard, so that without his having acted otherwise than as might have been excusable in a prudent man, under the circumstances, he was run down. Where the conduct of the defendant was plainly negligent and caused the injury, and there is dispute or doubt as to the negligence of the plaintiff, the conclusion of one man, though learned in the law, should not be forced upon twelve men sworn to try the facts. If there was any evidence tending to show that the plaintiff's intestate was thrown off his guard by such means as might have such effect upon an ordinarily prudent man—and we think there was some such evidence—it was not wrong to submit to the jury the question of contributory negligence.

If, without disagreement, the jury had returned definite and responsive answers to the interrogatories upon which they disagreed and those which they did not answer fully, and if the answers to such interrogatories, taken in connection with the other answers given, could not have controlled the general verdict and authorized a judgment contrary thereto, whatever might have been the character of the answers to the interrogatories which were not answered satisfactorily, then the appellant was not injured by the action of the court in refer-

ence to those answers. *Indianapolis, etc., R. R. Co.* v. *Stout,.* 53 Ind. 143; *West* v. *Cavins,* 74 Ind. 265; *Noakes* v. *Morey,* 30 Ind. 103; *North Western Mut. L. Ins. Co.* v. *Heimann,* 93 Ind. 24.

We may examine whether there was any injurious error in such action of the court in connection with our examination as to whether the court erred in overruling the motion for judgment on the interrogatories, notwithstanding the general verdict.

That the answers to interrogatories may control the general verdict, there must be material conflict between the answers and the verdict; the answers must exclude every conclusion that would authorize the general verdict, and there must be a repugnancy that could not have been removed by any additional finding as to other facts which could have been made upon any evidence admissible under the issues. *Indianapolis, etc., R. R. Co.* v. *Stout, supra; Indianapolis, etc., R. R. Co.* v. *McCaffrey,* 62 Ind. 552; *Woollen* v. *Wishmier,* 70 Ind. 108; *West* v. *Cavins, supra.*

The question in issue was whether the deceased was killed through the negligence of the defendant, without his contributory negligence. Suppose that the jury, instead of disagreeing, had answered that the deceased was struck a few feet west of the line of the street. If he was a trespasser there could have been no recovery, for wilfulness was not in issue. But it would not necessarily follow from such an answer, that he was a trespasser. Under the issues, there might have been, without variance, evidence showing that the deceased was rightfully at such place outside of the limits of the street, as surveyed. The place where he was struck, while not within such limits, may have been used habitually by the public in approaching the depot, with the knowledge and consent of the defendant, as a part of the highway, and may thus have constituted a part of the public crossing. 1 Thomp. Neg. 416, 417, and authorities there cited. It might have been that the defendant would be liable for injuring him through

negligence, whatever answers had been given by the jury to these interrogatories.

Without a finding upon a fact as to which no interrogatory was propounded, no answer which would control the verdict could have been made to the questions upon which the jury disagreed.

The appellant was dissatisfied with the answers to the twenty-third and thirtieth interrogatories. No answer which could have been expected would have shown exactly where the deceased was when the conductor and the brakeman shouted, or that he could have heard them, or that the defendant was not guilty of negligence which caused the intestate's death without his contributory negligence. An affirmative answer could not have rendered the special findings capable of controlling the general verdict.

It is earnestly insisted that the answers to the interrogatories in relation to the distance along the main track toward the east to which the deceased could have seen from certain points north of that track precluded recovery by showing contributory negligence. None of the answers showed that the cars could have been seen by him from such points; the places at which the train was when he was at those points were not found or inquired about. There was no finding as to the distance from the crossing to the place where the engine was detached, and it was not shown at what speed the intestate approached the crossing.

One of the answers indicated that if the intestate had looked in the direction of the train, he could have seen it in time to stop before stepping upon the track in front of it. This answer was not necessarily inconsistent with the existence of such facts, through the defendant's fault, as were reasonably calculated to distract the attention of the intestate and throw him off his guard, so that, without his being subject to the imputation of imprudence, he might have failed to look for the train. It has been held, that the fact that a person attempting to cross a railroad does not at the instant of stepping

on it look to ascertain if a train is approaching, is not conclusive of want of due care on his part. *Plummer* v. *Eastern R. R. Co.*, 73 Maine, 591. See, also, *Pennsylvania R. R. Co.* v. *Ogier, supra.*

Under the motion for judgment, no presumptions can be indulged in this court against the general verdict, but all presumptions must be indulged in its favor. Notwithstanding these answers, there could have been evidence tending to establish facts, which, if stated in answers to interrogatories, would have shown the intestate not guilty of contributory negligence. *Terre Haute, etc., R. R. Co.* v. *Clark*, 73 Ind. 168.

Certain specifications of causes in the motion for a new trial related to the admission of evidence as shown by a certain special bill of exceptions. The general bill of exceptions, purporting to contain all the evidence, shows the evidence to which objection was made to have been materially different from that shown in the special bill. In view of this discrepancy we will not further extend this opinion. The judgment should be reversed.

PER CURIAM.—Upon the foregoing opinion, it is ordered that the judgment be reversed, at the costs of the appellee, and the cause is remanded for a new trial.

Filed April 10, 1885; petition for a rehearing overruled April 20, 1886.